No. 25-1705 / 25-1703 / 25-1754

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WINERIES OF THE OLD MISSION PENINSULA (WOMP) ASSOCIATION,
BOWERS HARBOR VINEYARD & WINERY, INC., BRYS WINERY, LC,
CHATEAU GRAND TRAVERSE, LTD., CHATEAU OPERATIONS, LTD,
GRAPE HARBOR, INC., MONTAGUE DEVELOPMENT, LLC, OV THE
FARM, LLC, TABONE VINEYARDS, LLC, TWO LADS, LLC, VILLA MARI,
LLC, WINERY AT BLACK STAR FARMS, LLC

Plaintiffs – Appellees [25-1703/25-1705]/Cross-Appellants [25-1754]
v.

PENINSULA TOWNSHIP

Defendant – Appellant [25-1703]/Cross-Appellee [25-1754]

and

PROTECT THE PENINSULA

Intervenor – Appellant. [25-1705]/Cross-Appellee [25-1754]

Appeal from the United States Trial Court
For the Eastern District of Michigan
Case No. 20-cv-01008

**REPLY TO APPELLEES/CROSS-APPELLANTS' OPPOSITION TO
MICHIGAN MUNICIPAL LEAGUE (MML) LEGAL DEFENSE FUND'S
MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. ii

INTRODUCTION ............................................................................................1

A. CLARIFICATION OF DISCLOSURE REQUIREMENT. ..............................2

B. IN SUGGESTING THAT AMICUS CHARACTERIZES ALL CONSTITUTIONAL RIGHTS AS "SECOND-TIER," PLAINTIFFS EITHER MISUNDERSTAND, OR INTENTIONALLY DISTORT, THE STATEMENT OF AMICUS THAT THE SPECIFIC CONSTITUTIONAL RIGHTS RAISED BY PLAINTIFFS ARE NOT REGULARLY ADVOCATED AS THE PRIMARY GROUNDS FOR INVALIDATING ZONING, UNLIKE THOSE ROUTINELY ADVANCED UNDER THE BANNER OF "DUE PROCESS," "TAKINGS," AND "EQUAL PROTECTION," WHICH ARE THE PREDOMINANT CONSTITUTIONAL GROUNDS FOUND IN COMPLAINTS ATTACKING ZONING. .......................................................2

C. THE PROFESSIONAL PLANNER, DR. DANIELS, DID NOT LACK CREDIBILITY. RATHER, HIS CONTRIBUTION TO THIS CASE WAS RESTRICTED TO THE POINT THAT HIS EXPLANATION OF THE PLANNING AND ZONING OBJECTIVE OF THE TOWNSHIP TO PRESERVE THE ESSENCE OF AGRICULTURAL RESOURCES ON THE PENINSULA WAS NOT RECOGNIZABLE BY EITHER THE DISTRICT COURT OR PLAINTIFFS. ...................................................4

D. AMICUS DOES NOT SIMPLY REPEAT THE TOWNSHIP'S AND PTP'S PREEMPTION ARGUMENTS, AND DID NOT MISUNDERSTAND THE RECORD BELOW..............................................7

CONCLUSION....................................................................................................8

PROOF OF SERVICE.........................................................................................9

CERTIFICATION OF COMPLIANCE ...............................................................9

i

# INDEX OF AUTHORITIES

**Cases**

*Brae Burn, Inc. v. Bloomfield Hills*,
    350 Mich. 425; 86 N.W.2d 166 (1957) ....................................................................3

*Hess v West Bloomfield Township*,
    439 Mich. 550; 486 N.W.2d 628 (1992) .................................................................1

*K & K Constr., Inc. v. Dep't of Natural Resources*,
    456 Mich. 570; 575 N.W.2d 531 (1998) .................................................................4

*Kirk v. Tyrone Township,*
    398 Mich. 429; 247 N.W.2d 848 (1976) .................................................................4

*Kropf v. City of Sterling Heights*,
    391 Mich. 139; 215 N.W.2d 179 (1974) .................................................................3

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104; 98 S.Ct. 2646; 57 L.Ed.2d 631 (1978) .............................................3

*Tahoe-Sierra Preservation Council, Inc v Tahoe Regional Planning Agency,*
    535 U.S. 302; 122 S.Ct. 1465; 152 L.Ed.2d 517 (2002) .........................................3

*Village of Belle Terre v. Boraas,*
    *416 U.S. 1; 94 S.Ct. 1536; 39 L.Ed.2d 797* (1974)................................................3

*Village of Euclid vs. Ambler Realty Co.*
    272 U.S. 365; 47 S.Ct. 114; 54 A.L.R. 1016; 71 L.Ed. 303 (1926) .......................3

**Statutes**

MCL 125.3101 .......................................................................................................1
MCL 436.1916(11) .................................................................................................7

**Other Authorities**

Mich Const 1963, art 4, §54........................................................................... 1, 4, 6

## **INTRODUCTION**

It would appear that Plaintiffs' main objective in filing objections to the several *amicus* briefs is to subtly expand their briefing word count. On the pretext of attacking the *amicus* briefs, and rather than filing responsive briefs, Plaintiffs go on at length to enhance their briefing by providing further argument in support of their case.

With regard to Plaintiffs' objection to the MML's *Amicus* Brief, it is important to note that there is a conspicuous absence of any mention of MML's argument on the significance of Article 4, §54 of the Michigan Constitution as it relates to the issues in this case. That provision of the state constitution, read with the Michigan Supreme Court's opinion in *Hess v West Bloomfield Township*, 439 Mich. 550, 562-565; 486 N.W.2d 628 (1992), and relevant provisions of the Michigan Zoning Enabling Act, MCL 125.3101, *et seq.,* (quoted in the MML *Amicus* Brief), stands for the proposition that a township's use of the zoning authority to achieve the conservation of agricultural resources of the state is "hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people." The District Court trampled this paramount public concern in favor of placing relatively unrestrained commercial use on a high mountain of dominance.

1

The MML's proposed Brief is helpful to the Court for the MML's perspective on this and other issues—and is not simply repetitive of the Defendants' arguments—and therefore should be accepted by the Court.

**A. CLARIFICATION OF DISCLOSURE REQUIREMENT.**

GLS's disclosure indicated: "No counsel for a party authored this Brief in whole or in part. No counsel or party made a monetary contribution to the preparation of this Brief." The following is also true, and GLS respectfully requests that it be added to the certification/disclosure: "No person other than the *Amicus*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief."

**B. IN SUGGESTING THAT AMICUS CHARACTERIZES ALL CONSTITUTIONAL RIGHTS AS "SECOND-TIER," PLAINTIFFS EITHER MISUNDERSTAND, OR INTENTIONALLY DISTORT, THE STATEMENT OF AMICUS THAT THE SPECIFIC CONSTITUTIONAL RIGHTS RAISED BY PLAINTIFFS ARE NOT REGULARLY ADVOCATED AS THE PRIMARY GROUNDS FOR INVALIDATING ZONING, UNLIKE THOSE ROUTINELY ADVANCED UNDER THE BANNER OF "DUE PROCESS," "TAKINGS," AND "EQUAL PROTECTION," WHICH ARE THE PREDOMINANT CONSTITUTIONAL GROUNDS FOUND IN COMPLAINTS ATTACKING ZONING.**

A reliable reference for identifying the typical constitutional claims asserted in cases challenging the validity of zoning ordinances or decisions is the identifiable set of federal and state *lead cases* on this subject. The case that is the "Grandad" at the top of the pyramid is *Village of Euclid vs. Ambler Realty Co.* 272 U.S. 365; 47

S.Ct. 114; 54 A.L.R. 1016; 71 L.Ed. 303 (1926), in which the Court indicated that

"[t]he ordinance is assailed on the grounds that it is in derogation of section 1 of the

Fourteenth Amendment to the federal Constitution in that it deprives appellee of

liberty and property without *due process of law* and denies it the *equal protection of*

*the law." Id.,* p 384. Likewise, in *Village of Belle Terre v. Boraas, 416 U.S. 1, 8; 94*

*S.Ct. 1536; 39 L.Ed.2d 797* (1974), the Court characterized that case as follows: "We

deal with economic and social legislation where legislatures have historically drawn

lines which we respect against the charge of violation of the Equal Protection Clause

if the law be 'reasonable, not arbitrary' and bears 'a rational relationship to a

(permissible) state objective."

In one of the Court's most cited cases, *Penn Cent. Transp. Co. v. City of New*

*York*, 438 U.S. 104; 98 S.Ct. 2646; 57 L.Ed.2d 631 (1978), the Court established a

basic rule for determining whether the application of a regulation results in a

"taking" of private property under the Fifth and Fourteenth Amendment. Similarly,

*Tahoe-Sierra Preservation Council, Inc v Tahoe Regional Planning Agency,* 535

U.S. 302; 122 S.Ct. 1465; 152 L.Ed.2d 517 (2002), was a takings case.

In Michigan, the most significant zoning cases were brought seeking relief

under the Due Process Clause: *Brae Burn, Inc. v. Bloomfield Hills*, 350 Mich. 425;

86 N.W.2d 166 (1957); *Kropf v. City of Sterling Heights*, 391 Mich. 139; 215

N.W.2d 179 (1974), cited by *Kirk v. Tyrone Township,* 398 Mich. 429, 439; 247

N.W.2d 848 (1976). *K & K Constr., Inc. v. Dep't of Natural Resources*, 456 Mich.

570, 576; 575 N.W.2d 531 (1998), is a central lead takings case.

The precise language of the proposed of *Amicus* Brief, attacked by Plaintiffs,

explains that, "instead of a classic zoning challenge, this case involves a collection

of what might typically be seen as second-tier arguments in a zoning case—void-

for-vagueness, free speech, religious issues, dormant commerce clause, etc." The

simple point of *Amicus* is that, in this case, Plaintiffs have not asserted a "classic

zoning challenge." Plaintiffs seek to distort that simple point.

**C.    THE PROFESSIONAL PLANNER, DR. DANIELS, DID NOT LACK CREDIBILITY. RATHER, HIS CONTRIBUTION TO THIS CASE WAS RESTRICTED TO THE POINT THAT HIS EXPLANATION OF THE PLANNING AND ZONING OBJECTIVE OF THE TOWNSHIP TO PRESERVE THE ESSENCE OF AGRICULTURAL RESOURCES ON THE PENINSULA WAS NOT RECOGNIZABLE BY EITHER THE DISTRICT COURT OR PLAINTIFFS.**

Ignoring Article 4, §54 if the Michigan Constitution, the District Court

bestowed upon Plaintiffs a right to relatively unrestrained commercial use in

connection with their wineries. This priority for commercial use ignored the long-

recognized authority of local legislative bodies to plan and zone in the best interests

of their communities.

The critical characteristics of the Peninsula represent a lure to both

agricultural use/development *and* high-intensity residential and commercial

development. In the relatively little space available on this Peninsula, it is not

4

feasible to have both sustained agricultural use and high-intensity residential and commercial development. As clarified in its *Amicus* Brief, when high-end, intense residential and commercial development occurs—providing relatively high economic returns—property values increase dramatically in relation to the agricultural values, the result is that agricultural uses become economically unfeasible to maintain, particularly in terms of property taxation. Again, considering the limited area on the Peninsula, once subdivisions, apartments, and full commercial developments are in place, farming on such land is no longer feasible for the additional reason of the reduced space for agricultural development and the destruction of the agricultural character of the area.

The Township's duly-elected officials did not unreasonably favor agricultural interests or ignore commercial interests. Rather, the Township sought to **balance and compromise** the preservation of agricultural uses with the authorization for accessory residential and commercial usage to provide sufficient economic incentives to promote the continuation of the agricultural uses without destroying their feasibility.[1] Commercial uses were permitted, **but not full principal commercial uses that would otherwise smother the agricultural uses and**

---

[1] For example, see the Township's Master Plan, RE 142-2, PageID # 5038-5039.

**character**, but rather something less than that.[2] Commercial accessory uses were

permitted consistent with Art. 4, § 52 of the Michigan Constitution.

The failure on the part of the District Court to appreciate this attempt to

balance the important interests of the parties is very obvious in the following position

of the District Court criticizing Dr. Daniels, as highlighted in Plaintiffs' opposition

to the MML *Amicus* Brief (Case 25-1703, Doc. 60, p. 9):

> Dr. Daniels opined that it was reasonable to restrict the Wineries'
> commercial transactions but then conceded on cross-examination that
> selling wine was a commercial transactions.

Dr. Daniels in fact *attempted* to explain the distinction between full commercial and

the Township's vision of restrained commercial. The following testimony was

quoted by the District Court, but the explanation was not recognized:

> According to Dr. Daniels, Peninsula Township strives to balance
> agricultural production, agricultural processing, and the sale of
> agricultural products against **purely commercial** activity with no direct
> relationship to agriculture. The A-1 District contains a significant
> amount of farmland in active agricultural production while allowing for
> limited reasonable economic use of the property, as evidenced by some
> wineries operating their facilities as principally agricultural businesses
> in the A-1 District for decades. (Emphasis supplied).

(Bench Opinion, dated 07/07/25, ECF No. 623, p 23.)

---

[2] See, e.g., Dr. Daniels Report, RE 616, PageID # 30867; and the Master Plan, RE 142-2, PageID # 5038-5039.

The failure on the part of the District Court to recognize the compromise embodied in the zoning ordinance was fatal to a fair understanding of Dr. Daniels insights and expertise, and ultimately to a fair outcome in this case.

**D.     AMICUS DOES NOT SIMPLY REPEAT THE TOWNSHIP'S AND PTP'S PREEMPTION ARGUMENTS, AND DID NOT MISUNDERSTAND THE RECORD BELOW.**

On the music amplification issue, *Amicus* actually made two arguments. The first was that the District Court improperly read into the language of the applicable statute the term "amplified." That argument speaks for itself and *Amicus* will not expand upon it here, except to note that Plaintiffs' objections do not actually respond to the point of that discussion.

But the more significant argument in terms of the practical application of the District Court's preemption conclusions in future cases is not addressed by Plaintiffs in their opposition motion at all. *Amicus* does in fact take the position that the Township can have a complete prohibition on music (even amplified music) despite the fact that the liquor license refers to it. As argued at much greater length in the proposed Brief, the mere fact that the Michigan Liquor Control Act, MCL 436.1916(11), states that a liquor licensee does not need an additional permit from the LCC in order to play instrumental music as part of its liquor license does **not** mean that the state is actually permitting the playing of instrumental music at every

licensed facility within the Township regardless of the Township's own potential zoning and land use regulations.

Instead, that statutory language is what it says it is: simply a statement that a liquor license holder does not need a permit *from the state* to play music—without ever addressing the question of whether music of any kind (amplified or not) is allowed under the Special Land Use permits granted by the Township. Put simply, the permitted/prohibited discussion by the District Court and Plaintiffs in their various filings over the course of the case, is simply wrong as a matter of Michigan law.

## CONCLUSION

The proposed Brief is helpful to the Court and is not flawed in the manner suggested in the Plaintiffs' Objections.

WHEREFORE, *Amicus* respectfully prays that this Court will grant its motion and accept the proposed *Amicus Curiae* Brief for filing and consideration.

Respectfully submitted,

/s/ Gerald A. Fisher
Gerald A. Fisher (P13462)
Co-Counsel for Amicus Curiae
6745 Parke Lake Drive
Clarkston, MI 48346
248-514-9814

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

  /s/ Thomas R. Schultz
THOMAS R. SCHULTZ (P 42111)
Co-Counsel for *Amicus Curiae*
27555 Executive Drive, Suite 250
Farmington Hills, MI  48331-3550
(248) 489-4100

## PROOF OF SERVICE

I certify that on March 2, 2026, the foregoing document was served on all parties or their counsel of record through the Court's e-file system.

  /s/ Thomas R. Schultz

## CERTIFICATION OF COMPLIANCE

I certify that this Reply Brief complies with the length limitation in Rule 27(d)(2)(D) of the Federal Rules of Appellate Procedure and contains 1,748 words. I further certify that this Brief complies with the type face requirements in Rule 32(a)(5) of the Federal Rules of Appellate Procedure. I prepared the brief in Microsoft® Word and used Times New Roman, a proportionally-spaced, 14-point font.

  /s/ Thomas R. Schultz