No. 25-1705 / 25-1703 / 25-1754

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WINERIES OF THE OLD MISSION PENINSULA (WOMP) ASSOCIATION, BOWERS HARBOR VINEYARD & WINERY, INC., BRYS WINERY, LC, CHATEAU GRAND TRAVERSE, LTD., CHATEAU OPERATIONS, LTD, GRAPE HARBOR, INC., MONTAGUE DEVELOPMENT, LLC, OV THE FARM, LLC, TABONE VINEYARDS, LLC, TWO LADS, LLC, VILLA MARI, LLC, WINERY AT BLACK STAR FARMS, LLC

Plaintiffs – Appellees [25-1703/25-1705]/Cross-Appellants [25-1754]

v.

PENINSULA TOWNSHIP

Defendant – Appellant [25-1703]/Cross-Appellee [25-1754]

and

PROTECT THE PENINSULA

Intervenor – Appellant. [25-1705]/Cross-Appellee [25-1754]

Appeal from the United States Trial Court
For the Eastern District of Michigan
Case No. 20-cv-01008

**REPLY TO APPELLEES/CROSS-APPELLANTS' OPPOSITION TO
THE GOVERNMENT LAW SECTION (GLS) OF
THE STATE BAR OF MICHIGAN'S MOTION FOR LEAVE
TO FILE AMICUS CURIAE BRIEF**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

   A.  CLARIFICATION OF DISCLOSURE REQUIREMENT. ............................ 1

   B.  NATURE OF PLAINTIFFS' CONSTITUTIONAL CLAIMS. ..................... 2

   C.  PLAINTIFFS VASTLY OVERSTATE THE LIMITATIONS ON THE APPLICATION OF THE "FINALITY" DOCTRINE ................................. 2

   D.  A PARTY WHO APPLIES FOR AND IS GRANTED A DISCRETIONARY AUTHORIZATION TO DEVELOP PROPERTY, AND ACCEPTS THAT RIGHT, AND THEN GOES ON TO IMPROVE AND USE THE PROPERTY ACCORDINGLY, IS PREVENTED UNDER *EQUITABLE PRINCIPLES* FROM LATER CHALLENGING THE GRANTED RIGHT, WHETHER ON THE BASIS OF ESTOPPEL, LACHES OR OTHERWISE. THE LAW OF CONTRACTS NEED NOT BE APPLIED. ................................................... 6

   E.  PLAINTIFFS DO NOT ACTUALLY ADDRESS AMICUS'S POINT THAT THE VAGUENESS DISCUSSION IS GENERALLY NON-SUBSTANTIVE. ................................................................................. 8

CONCLUSION .................................................................................................. 10

PROOF OF SERVICE ....................................................................................... 10

CERTIFICATION OF COMPLIANCE .............................................................. 11

# INDEX OF AUTHORITIES

**Cases**

*Carleton Sportsman's Club v. Exeter Township*,
  217 Mich.App. 195 (1996) ..................................................................................4

*Chesnow v. Nadell*,
  330 Mich 487 (1951) .........................................................................................7

*Holzbaugh v. Detroit Bank & Trust Co.*,
  371 Mich. 432 (1963) ........................................................................................6

*Hope v. Detroit Trust Co.*,
  275 Mich 213 (1936) .........................................................................................7

*Knick v. Township of Scott, Pa.*,
  588 U.S. 180; 139 S.Ct. 2162; 204 L.Ed.2d 558 (2019) ...............................4, 5

*Lilly v. Townsend*,
  110 Mich 253 (1896) .........................................................................................7

*National Boatland, Inc, v Farmington Hills Zoning Board of Appeals*,
  146 Mich.App. 380 (1986) ................................................................................3

*Sprague v. Trustees of the Protestant Episcopal Church Diocese of Michigan*,
  186 Mich 554 (1915) .........................................................................................7

*Williamson County Regional Planning Commission v. Hamilton Bank*,
  473 U.S. 172; 105 S.Ct. 3108; 87 L.Ed.2d 126 (1985) .................................4, 5

**Statutes**

MCL 125.3604(7) ....................................................................................................3

**Other Authorities**

28 ALR 2d 116........................................................................................................7

57 Am Jur, Wills, § 802 ..........................................................................................7

96 CJS, Wills, § 1149..............................................................................................7

## INTRODUCTION

It would appear that Plaintiffs' main objective in filing objections to the several *amicus* briefs in this case is to subtly expand their briefing word count. On the pretext of attacking *amicus* briefs, and rather than filing responsive briefs, Plaintiffs go on at length to enhance their briefing by providing further argument in support of their case. Addressing the GLS "finality" argument, for example, Plaintiffs spend an additional 4 ½ pages arguing their case.

To the extent possible, *Amicus* will keep its reply to the issues relating to the actual objections. To start, *Amicus* believes that its proposed Brief is in fact helpful to the Court and not simply a duplicate of the Defendants' arguments. The proposed Brief should be accepted by the Court.

**A.   CLARIFICATION OF DISCLOSURE REQUIREMENT.**

GLS's disclosure indicated: "No counsel for a party authored this Brief in whole or in part. No counsel or party made a monetary contribution to the preparation of this Brief." The following is also true, and GLS respectfully requests that it be added to the certification/disclosure: "No person other than the *Amicus*, its members, or its counsel contributed money that was intended to fund preparing or submitting the Brief."

1

**B.     NATURE OF PLAINTIFFS' CONSTITUTIONAL CLAIMS.**

At no point in its Brief does the *Amicus* say that the constitutional claims are improper, or that challenges to local zoning ordinances cannot implicate the constitutional rights addressed in Plaintiffs' Complaint. *Amicus* merely noted (and not incorrectly) that a number of the Plaintiffs' claims are not typically found in the challenge to local zoning ordinances—in part because of the nature of the zoning process, including the "safety valves" built into it that (if properly used) might normally allow resolution well short of a constitutional claim. Identifying certain constitutional rights as less than typical in a zoning ordinance case does not put them in a back seat so much as is does put them in perspective.

**C.     PLAINTIFFS VASTLY OVERSTATE THE LIMITATIONS ON THE APPLICATION OF THE "FINALITY" DOCTRINE.**

Plaintiffs clearly failed to comply with the finality doctrine. If they had complied, it is likely that many of their claims would have been obviated. As clarified in the proposed *Amicus* Brief filed by GLS, this form of relief requires a property owner to seek remedies available under the ordinances of the local unit of government, with the view that, if granted, alleged constitutional violations may never arise.

In other words, until the local government makes a final ruling on available remedies, the existence and extent of the alleged constitutional violations cannot be measured or known and seeking judicial relief is unripe. Plaintiffs apparently

understood the strength of the GLS' argument on this point, considering that they utilized 4 ½ pages of their opposition to the GLS motion for leave to file its proposed *Amicus* Brief.

Plaintiffs had the right to ask the Zoning Board of Appeals for "variance" relief from the strict letter of the Zoning Ordinance under MCL 125.3604(7). This avenue of administrative pursuit was available based on the frequently-used standard of "practical difficulty," a form of relief that is routinely granted considering that the greatest hurdle to relief is a demonstration that "compliance with the strict letter of the restrictions . . . would render conformity with such restrictions unnecessarily burdensome." *National Boatland, Inc, v Farmington Hills Zoning Board of Appeals,* 146 Mich.App. 380, 388 (1986).

Likewise, Plaintiffs could have pursued relief in the form of a proposed amendment of their Special Land Use (SLU) permit approval, potentially in combination with variance relief. Plaintiffs argue that this form of relief would not have been feasible because "Peninsula Township was certainly committed to its position that the applicable ordinances applied to and should be enforce against the Wineries." (Plaintiffs' Opposition Brief Case 25-1703, Doc. 60, p 7.)  The fact that an ordinance is "applicable" does not prohibit a property owner from attempting to approach the community with a modified arrangement for its use, again with the possibility of pairing variance relief as part of the request.

3

Moreover, in the event of an administrative denial of proposed variance relief, or of a proposed amendment of an outstanding Special Land Use approval (or a combination of the two), relief by appeal to the circuit court would be available. See MCL 125.3605 with regard to variance relief, and *Carleton Sportsman's Club v. Exeter Township*, 217 Mich.App. 195 (1996), regarding an appeal of a special land use ruling by the local unit of government.

This leaves this issue of the viability of the "finality" requirement following the decision in *Knick v. Township of Scott, Pa.*, 588 U.S. 180; 139 S.Ct. 2162; 204 L.Ed.2d 558 (2019). Plaintiffs embellish the *Knick* holding, urging that, in *Knick*, the Court fully overruled *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186; 105 S.Ct. 3108; 87 L.Ed.2d 126 (1985). Such a position is a gross overstatement because the holding in *Knick* only *partially* overruled *Williamson.*

There were two parts of the holding in *Williamson* in terms of the limitation on a property owner to commence an action in Court seeking a taking remedy:

(1) That a taking is not considered to have occurred unless and until the property owner seeks available administrative remedies under the local ordinance in pursuit of **a final decision clarifying the use and development limitations on the property**. Under this part of the *Williamson* finality holding, a taking is not deemed to have occurred

4

until the local government has rendered a final decision on the property owner's petition for an available local remedy. In other words, this prong of *Williamson* does not establish an impediment to the commencement of an action in court as soon as a *taking* has occurred. Rather, the proposition is that, until the available administrative remedy has been pursued, *it is not yet known whether a taking has occurred.*

(2) That a property owner is prevented from going to federal court before pursuing an available state court remedy for securing just compensation. It was this second proposition that was overruled in *Knick:* "The state-litigation requirement of *Williamson County* is overruled. A property owner may bring a *takings claim* under § 1983 **upon the taking of his property** without just compensation by a local government." (Emphasis supplied). 588 US at p 206.

Bringing all of this back to the present case, there is no suggestion that Plaintiffs were compelled to go to state court in pursuit of a just compensation remedy. It is the first proposition in *Williamson* that requires reversal of this case. Plaintiffs had alternative viable administrative remedies, outlined above, available for the purpose of determining whether a constitutional violation existed. Plaintiffs failed to avail themselves of these viable remedies.

**D. A PARTY WHO APPLIES FOR AND IS GRANTED A DISCRETIONARY AUTHORIZATION TO DEVELOP PROPERTY, AND ACCEPTS THAT RIGHT, AND THEN GOES ON TO IMPROVE AND USE THE PROPERTY ACCORDINGLY, IS PREVENTED UNDER *EQUITABLE PRINCIPLES* FROM LATER CHALLENGING THE GRANTED RIGHT, WHETHER ON THE BASIS OF ESTOPPEL, LACHES OR OTHERWISE. THE LAW OF CONTRACTS NEED NOT BE APPLIED.**

Plaintiffs attempt to snuff out a viable defense brought to the Court's attention in the GLS proposed *Amicus* Brief. Plaintiffs' stated basis for this attempt is a ruling by the District Court which amounts to nothing more than a diversion from a viable ground for relief based on the application of equitable principles. Specifically, GLS has presented the point for the Court's consideration that Plaintiffs in this case sought discretionary Special Land Use permits. Those permits were granted. Plaintiffs then improved and used their properties in a manner that would not have been permitted in the absence of the grant and acceptance of the Special Land Use permits.

In other words, Plaintiffs accepted the benefits of the permits, but now seek to challenge the very relief they relied on to their benefit. Such a challenge is not permitted on the basis of *equitable grounds*, without regard to whether the Special Land Use permit is a contract.

In *Holzbaugh v. Detroit Bank & Trust Co.*, 371 Mich. 432, 435-436 (1963), the Michigan Supreme Court affirmed a trial court holding, quoted as follows:

The trial judge dismissed, basing his order primarily upon estoppel, laches, and acquiescence. We quote from his opinion:

"Defendants individually press their motions to dismiss on the theories of estoppel, laches, and acquiescence. As noted in 96 CJS, Wills, § 1149:

"'It is well settled that a legatee or devisee who accepts the benefits of a will is estopped to deny its validity.'

"See, also, 57 Am Jur, Wills, § 802, and 28 ALR 2d 116. To use the language of *Lilly v. Townsend*, 110 Mich 253:

"If one accepts benefits because she was then satisfied with the will or because she has made up her mind to accept its provisions, then she is estopped from contesting the will.

"Laches is grounded upon unconscionable delay; it strikes at stale claims of those who sit upon their rights. Where there is long delay without explanation the doctrine may be invoked. See *Sprague v. Trustees of the Protestant Episcopal Church Diocese of Michigan*, 186 Mich 554, and *Chesnow v. Nadell*, 330 Mich 487.

"Acquiescence, a related doctrine, emphasizes the element of consent to that which is happening or has happened. See *Hope v. Detroit Trust Co.*, 275 Mich 213.

Allowing the Plaintiffs to accept and take full advantage of the Special Land Use permits, and then after many years challenge the very same permits, is unconscionable. The District Court accepted this inequitable scheme, and the determination built on the foundation of that scheme should be reversed.

### E. PLAINTIFFS DO NOT ACTUALLY ADDRESS AMICUS'S POINT THAT THE VAGUENESS DISCUSSION IS GENERALLY NON-SUBSTANTIVE.

Plaintiffs contend that *Amicus* failed to note some other opinions in which the District Court (according to Plaintiffs, anyway) expanded upon its initial ruling (June, 2022) that the phrase "Guest Activity Use" was vague. (Case 25-1703, Doc 62, p 11-13.) But literally the references on page 12 and 13 of Plaintiffs' response to R.301, PageID No. 10698 and R.319, PageID No. 11889 are just the District Court saying that it has already addressed the issue and won't address it again—in other words, they contain no additional substantive discussion whatsoever.

The other quote comes from R.211, PageID No. 7812-7813. *That* additional treatment was actually referred to by *Amicus* in its proposed Brief at footnote 10. (Case 25-1705, Doc 46, p 17, fn 10.) However, examination of the quote itself confirms *Amicus's* footnoted comment that the quoted language did not really add anything to the District Court's initial treatment of the vagueness issue. It simply states that the District Court will not "utilize tools of statutory interpretation" because it finds that the term "Guest Activity Use" is vague on its face. R.211, PageID No. 7812.

The District Court's explanation of that conclusion, though, is simply to say that the "Township ordinances failed to state that this list of guest activity uses is exhaustive." *Id.* at 7813. This is not at all substantively different from the Court's

8

June 3, 2022, finding (at ECF 162, PageID No. 6017) that the language of the Township's PTZO "is ambiguous as to whether these activities are the *only* permitted guest activity uses (subject to approval by the Court) or whether they are merely examples." The later opinion added no substance to the initial opinion.

*Amicus* stands by its reading of the District Court's various opinions as boiling down to a determination by the District Court that the language is ambiguous—which is not the same as unconstitutionally vague—and was given various applications by Township personnel. It remains *Amicus's* view that the language of the Township's Zoning Ordinance passes constitutional muster under a review of the language actually used by the ordinance drafters for the reasons set forth in *Amicus's* proposed Brief. The listed uses are pretty clearly—on the face of the zoning ordinance language—the only permissible guest activity uses.

It also remains *Amicus's* position, despite Plaintiffs' argument to the contrary, that the District Court's primary discussion on this issue—even when all opinions are taken into account—is by far simply about the Township's *application* of the language and the District Court's determination that by virtue of that application by the Township, the language must be vague. Again, the language here is not vague in a constitutional sense, and the District Court's fairly offhand and short discussion of it does not complete the task required of it to invalidate a duly-enacted local law in its entirety.

# CONCLUSION

The proposed Brief is helpful to the Court and is not flawed in the manner suggested in the Plaintiffs' Objection.

WHEREFORE, *Amicus* respectfully prays that this Court will grant its motion and accept the proposed *Amicus Curiae* Brief for filing and consideration.

Respectfully submitted,

/s/ Gerald A. Fisher
Gerald A. Fisher (P13462)
Co-Counsel for Amicus Curiae
6745 Parke Lake Drive
Clarkston, MI 48346
248-514-9814


ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

 /s/ Thomas R. Schultz
THOMAS R. SCHULTZ (P 42111)
Co-Counsel for *Amicus Curiae*
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3550
(248) 489-4100

# PROOF OF SERVICE

I certify that on March 2, 2026, the foregoing document was served on all parties or their counsel of record through the Court's e-file system.

   /s/ Thomas R. Schultz

# CERTIFICATION OF COMPLIANCE

I certify that this Reply Brief complies with the length limitation in Rule 27(d)(2)(D) of the Federal Rules of Appellate Procedure and contains 2,112 words. I further certify that this Brief complies with the type face requirements in Rule 32(a)(5) of the Federal Rules of Appellate Procedure. I prepared the brief in Microsoft® Word and used Times New Roman, a proportionally-spaced, 14-point font.

      /s/ Thomas R. Schultz