**Nos. 25-1703/25-1705/25-1754**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION, a Michigan Nonprofit Corporation (WOMP); BOWERS HARBOR VINEYARD & WINERY, INC, a Michigan Corporation; BRYS WINERY, LC, a Michigan Corporation; CHATEAU GRAND TRAVERSE, LTD., a Michigan Corporation; GRAPE HARBOR INC., a Michigan Corporation; MONTAGUE DEVELOPMENT, LLC, a Michigan limited liability company; OV THE FARM LLC, a Michigan liability company; TABONE VINEYARDS, LLC, a Michigan liability company; TWO LADS, LLC, a Michigan liability company; VILLA MARI, LLC, a Michigan liability company; WINERY AT BLACK STAR FARMS LLC, a Michigan liability company; CHATEAU OPERATIONS, LTD, a Michigan Corporation

      Plaintiffs – Appellees [25-1703/25-1705]/Cross-Appellants [25-1754],

v.

TOWNSHIP OF PENINSULA, MI, a Michigan Municipal Corporation

      Defendant – Appellant [25-1703]/Cross-Appellee [25-1754],

PROTECT THE PENINSULA, INC.

      Intervenor – Appellant. [25-1705]/Cross-Appellee [25-1754]

---

**THIRD BRIEF OF APPELLANT/CROSS APPELLEE
PROTECT THE PENINSULA INC.**

---

Tracy Jane Andrews (P67467)
Law Office of Tracy Jane Andrews, PLLC
420 East Front Street
Traverse City, MI 49686
(231) 714-9402

Holly L. Hillyer (P85318)
TROPOSPHERE LEGAL, PLC
420 East Front Street
Traverse City, MI 49686
(231) 709-4709

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................2

TABLE OF AUTHORITIES............................................................................3

    I.    INTRODUCTION ............................................................................11

    II.    REPLY TO PLAINTIFFS' RESPONSES....................................12

        A.    Plaintiffs misunderstand "enforcement."................................12

        B.    The First Amendment claims fail.............................................14

        C.    The due process claims fail......................................................22

        D.    The dormant Commerce Clause claims fail..............................30

        E.    The catering and music preemption claims fail........................33

        F.    Most Plaintiffs lack standing. ..................................................36

        G.    Most Plaintiffs' claims are time-barred....................................42

        H.    The court erred in preventing PTP from fully defending Plaintiffs' claims. ....................................................................48

    III.    RESPONSE TO PLAINTIFFS' CROSS-APPEALS ...........52

        A.    Summary of the Argument.......................................................52

        B.    Plaintiffs' operating hours preemption claim fails...................53

        C.    Plaintiffs introduced an operating-hours due process claim too late.....58

        D.    MLCC restaurant provisions do not preempt zoning. ..........62

        E.    Private commercial events are not protected commercial speech. ........66

    IV.    CONCLUSION.................................................................................71

CERTIFICATE OF WORD COUNT PURSUANT TO FRAP 32(g)................72

CERTIFICATE OF SERVICE ........................................................................73

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576 (6th Cir. 2013) ...................................................................................................................29

*Ale v. TVA*, 269 F.3d 680 (6th Cir. 2001) .................................................................59

*Alexis Bailly Vineyard, Inc. v. Harrington,* 482 F.Supp.3d 820 (D. Minn. 2020) ...30

*Alive Church of the Nazarene, Inc. v. Prince William County,* 59 F. 4th 92 (4th Cir. 2023) ........................................................................................................................70

*Allen v. Liquor Control Comm.*, 333 N.W.2d 20 (Mich. App.1982).........................33

*Alvarado v. J.C. Penney Co.*, 997 F.2d 803 (10th Cir. 1993) ..................................51

*Arizona v. California*, 460 U.S. 605 (1983)...................................................... 24, 42

*Bannister v. Knox Cty. Bd. of Educ.*, 49 F.4th 1000 (6th Cir. 2022) ................. 23, 26

*Bard v. Brown County,* 970 F.3d 738 (6th Cir. 2020).................................................63

*Barrett v. Baylor,* 457 F.2d 119 (7th Cir. 1972).........................................................49

*Bird v. Department of Human Services,* 935 F.3d 738 (9th Cir. 2019)......................44

*Board of Trustees of State University of New York v. Fox,* 492 U.S. 469 (1989) ....70

*Bolger v. Youngs Drug Products Corp* , 463 U.S. 60 (1983)....................................69

*Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).......................25

*Brandon Township. v. Tippett,* 616 N.W.2d 243 (Mich. App. 2000) .......................18

*Brenay v. Schartow*, 709 F. App'x 331 (6th Cir. 2017).............................................24

*Bristol Myers Squibb Co. v. Secretary of United States HHS,* 155 F.4th 245 (3rd Cir. 2025)..................................................................................................21

*Brown v. Board of Education of Topeka,* 347 U.S. 483 (1954)...............................47

*Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986) ..............................................51

*Buetenmiller v. Macomb County Jail*, 53 F.4th 939 (6th Cir. 2022)........................23

*Burzynski v. Cohen,* 264 F.3d 611 (6th Cir. 2001) ..................................................67

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967).....50

*Chalmers v. City of Los Angeles,* 762 F.2d 753 (9th Cir. 1985).............................59

*Chesnut v. United States*, 15 F.4th 436 (6th Cir. 2021)...........................................17

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System,* 603 U.S. 799 (2024).............................................................................................42

*Cressman v. Thompson,* 798 F.3d 938 (10th Cir. 2015)..........................................21

*Daunt v. Benson,* 956 F.3d 396 (6th Cir. 2020)......................................................33

*Delano Farms Co. v. California Table Grapes Comm'n,* 318 F.3d 895 (9th Cir. 2003) ................................................................................................ 20, 21

*DeRuiter v. Byron Twp.,* 949 N.W.2d 91 (Mich. 2020)...........................................36

*Dezman v. Bloomfield Charter Twp.*, 997 N.W.2d 42 (Mich. 2023) .......................62

*Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2022) ....................................................................................................24

*Dupree v. Younger*, 598 U.S. 729 (2023) ................................................................40

*Edel v. Filer Twp.*, 211 N.W.2d 547 (Mich. App. 1973)........................................48

*Edison v. Tenn. Department of Transportation of Children's Services,* 510 F.3d 631 (6th Cir. 2007)................................................................................................44

*Energy Michigan, Inc. v. Michigan Public Service Commission,* 126 F.4th 476 (6th Cir. 2025) ...........................................................................................32

*Fednav, Ltd. v. Chester*, 547 F.3d 607 (6th Cir. 2008)..............................................37

*Felix v. Young,* 536 F.2d 1126(6th Cir. 1979) ...........................................................56

*Flynt v. Shimazu,* 940 F.3d 457 (9th Cir. 2019) ........................................................44

*Friends of Tims Ford v. TVA*, 585 F.3d 955 (6th Cir. 2009) ....................................50

*Garber v. Menendez,* 888 F.3d 839 (6th Cir. 2018) ..................................... 30, 31, 32

*Grand v. City of University Heights,* 159 F.4th 507 (6th Cir. 2025)................. 12, 46

*Granholm v. Heald,* 544 U.S. 460 (2005)..................................................................63

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia,* 949 F.3d 116 (3rd Cir. 2020) .........................................................................................17

*Greater Temple of Jackson v. City of Jackson*, 733 N.W.2d 734 (Mich. 2007).......31

*Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275 (10th Cir. 2004)............................................................................................................61

*Herr v. U.S. Forest Service,* 803 F.3d 809 (6th Cir. 2015)........................................47

*Hoffman Estates v. Flipside,* 455 U.S. 489 (1982) ...................................................26

*Hoge v. Honda of Am. Mfg.*, 384 F.3d 238 (6th Cir. 2004)......................................36

*Independence Township v. Skibowski*, 355 N.W. 2d 903 (1984) ..............................68

*Johanns v. Livestock Marketing Ass'n,* 544 U.S. 550 (2005) ..................................21

5

*Jordan v. Jewel Food Stores, Inc.,* 743 F.3d 509 (7th Cir. 2014) .............................69

*Jott, Inc. v. Clinton Charter Twp.*, 569 N.W.2d 841 (Mich. App. 1997) .................56

*Kehoe Component Sales Inc. v. Best Lighting Products*, 796 F.3d 576 (6th Cir. 2015) ........................................................................................................... 24, 38

*Kuhnle Brothers, Inc. v.  County of Geauga,*103 F.3d 516 (6th Cir. 1997).............43

*Leary v. United States*, 224 U.S. 567 (1912) ...........................................................50

*Leelanau Wine Cellars v. Black & Red, Inc.,* 118 F. App'x 942 (6th Cir. 2004)......... ............................................................................................................ 39, 40

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014) ...............................68

*Lichtenstein v. Hargett,* 83 F.4th 575 (6th Cir. 2023) ..............................................69

*Livonia v. Dept. of Social Services,* 378 N.W.3d 402 (Mich. 1985)........................41

*MacDonald v. GMC,* 110 F.3d 337 (6th Cir. 1997) .................................................41

*Mallach v. Mt. Morris,* 284 N.W. 600 (Mich. 1939).................................................56

*Maple BPA, Inc. v. Bloomfield Charter Twp.,* 838 N.W.2d 915 (Mich. App. 2013)56

*Marcaida v. Rascoe*, 569 F.2d 828 (5th Cir. 1978)...................................................51

*McLemore v. Gumucio,* 149 F.4th 859 (6th Cir. 2025) .............................................68

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) .................................................23

*Miller v. Fabius Twp.*, 366 Mich. 250 (1962) .................................................... 36, 54

*Morales v. American Honda Motor Company,*151 F.3d 500 (6th Cir. 1998) ... 47, 51

*Morgan v. United States Department of Justice,* 473 F. Supp. 2d 756 (E.D. Mich. 2007), *aff'd*, 509 F.3d 273 (6th Cir. 2007) ..........................................................30

*Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342 (2nd Cir. 2005) ...............13

*Mutchall v. Kalamazoo,* 35 N.W.2d 245 (Mich. 1948)............................... 33, 55, 57

*National Advertising Co. v. Raliegh,* 947 F.2d 1158 (4th Cir. 1991)......................43

*National Amusement Co. v. Johnson,* 259 N.W. 342 (Mich. 1935).................. 33, 65

*New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022).........47

*Noey v. Saginaw,* 261 N.W. 88 (Mich. 1935).................................................... 55, 56

*Oppenhuizen v. Zeeland*, 300 N.W.2d 445 (Mich. App. 1980)...............................34

*Ortiz v. Jordan,* 562 U.S. 180 (2011) ................................................... 24, 39

*Paschal v. Flagstar Bank, FSB*, 295 F.3d 565 (6th Cir. 2002) ...............................24

*Patchak v. Lansing,* 105 N.W.2d 406 (Mich. 1960) ...............................................32

*Phillips v. DeWine,* 841 F.3d 405 (6th Cir. 2016) .....................................................38

*Pike v. Bruce Church, Inc*., 397 U.S. 137 (1970) ............................................. 31, 32

*Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503 (6th Cir. 2001)..............................................................................................................18

*R.S.W.W. v. Keego Harbor,* 397 F.3d 427 (6th Cir. 2005) ................................. 56, 57

*Rinard v. Luoma,* 440 F.3d 361 (6th Cir. 2006). ....................................................57

*Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383 (6th Cir.) ...17

*Ross v. Bernhard*, 396 U.S. 531 (1970) ..................................................................50

*Sanguine, Ltd. v. U.S. Dep't of Interior*, 798 F.2d 389 (10th Cir. 1986)..................51

*Schneider v. Dumbarton Developers, Inc*., 767 F.2d 1007 (D.C.Cir.1985).............51

Case: 25-1705    Document: 74    Filed: 05/18/2026    Page: 8

*Schwartz v. Flint,* 395 N.W.2d 678 (Mich. 1986) ......................................................65

*Shearson v. Holder,* 725 F.3d 588 (6th Cir. 2013)....................................................37

*Sherman Bowling Center v. Roosevelt Park,* 397 N.W. 2d 839 (Mich. App. 1987)54

*Sorrell v. IMS Health Inc.,* 564 U.S. 552 (2011).....................................................68

*Stafford's Restaurant, Inc. v. Oak Park,* 341 N.W.2d 235 (Mich. App. 1983) ........56

*State Farm Bank, FSB v. Reardon,* 539 F.3d 336 (6th Cir. 2008)............................53

*Tally v. Detroit,* 220 N.W.2d 778 (1974)..................................................................56

*Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472 (10th Cir. 1990) ......48

*Thomas v. Copeland,* 758 Fed. Appx. 377 (6th Cir. 2018) .......................................42

*Tolbert v. State of Ohio Department of Transportation,* 172 F.3d 934 (6th Cir. 1999) ................................................................................................................. 44, 45

*Tucker v. Union of Needletrades Industries & Textiles Employees,* 407 F.3d 784 (6th Cir. 2005) ............................................................................................... 61, 62

*U.S. Bank, N.A. v. Village of Lakeridge, LLC,* 583 U.S. 387 (2018) .......................58

*United States v. Board of Education,* 605 F.2d 573 (2nd Cir. 1979) .......................51

*United States v. Brighton Twp.,* 282 F.3d 915 (6th Cir. 2002) ................................48

*United States v. City of Detroit,* 712 F.3d 925 (6th Cir. 2013)................................50

*United States v. Kubrick,* 444 U.S. 111 (1979) ........................................................47

*United States v. O'Brien,* 391 U.S. 367 (1968) ........................................................69

*United States v. Oregon,* 657 F.2d 1009 (9th Cir. 1981)..........................................51

*United States v. Todd,* 920 F.2d 399 (6th Cir. 1990) ................................. 24, 38, 47
8

*United States v. United Foods, Inc.,* 533 U.S. 405 (2001)................................ 20, 21

*Virginia Hospital Association v. Baliles,* 868 F.2d 653 (4th Cir. 1989) ..................43

*Virginia State Conference NAACP v. County School Board of Shenandoah County,* 799 F.Supp.3d 515 (W.D. Va. 2025)....................................................................21

*West v. Wayne County,* 672 Fed. Appx. 535 (6th Cir. 2016) ....................................61

*Wilkins v. Daniels,* 744 F.3d 409 (6th Cir. 2014) .....................................................21

*Winchester v. WA Foote*, 396 N.W.2d 456 (Mich. App. 1986) ................................30

*Wineries of Old Mission Peninsula v. Peninsula Twp*. (*WOMP I*), 41 F.4th 767 (6th Cir. 2022) ...................................................................................................... 48, 50

*Wineries of Old Mission Peninsula v. Peninsula Twp*. (*WOMP II*), 2022 U.S. App. LEXIS 23575, 2022 WL 22236853 (6th Cir. 2022)...........................................49

*Wolpe v. Poretsky*, 144 F.2d 505 (DC Cir. 1944) ....................................................50

**Statutes**

MCL §§ 125.3201(1) .................................................................................................31

MCL §§ 125.3203(1) .................................................................................................31

MCL §§ 289.1101 ......................................................................................................34

MCL § 289.1107 .................................................................................................. 34, 64

MCL § 424.2114(2).....................................................................................................55

MCL § 426.1536(7)(h).................................................................................................63

MCL § 436.1111(5).....................................................................................................64

MCL § 436.1536 ...............................................................................................62

MCL § 436.1547 ...............................................................................................34

MCL § 436.1916(11)..................................................................................... 35, 36

MCL § 436.2111 ........................................................................................... 53, 55

MCL § 436.2114 ........................................................................................... 53, 55

MCL §§ 436.1603 .............................................................................................63

MCL §§ 463.1202 .............................................................................................63

## Other Authorities

37 Am. Jur., Municipal Corporations, § 165 (1941)..................................................36

Black's Law Dictionary (11th ed. 2019).................................................................12

## Rules

Fed. R. Civ. P. 37(c)(1).......................................................................................45

Mich. Admin. Code R. 436.1003(1) ................................................................. 33, 34

Mich. Admin Code R. 436.1403 ...................................................................... 53, 57

## Constitutional Provisions

Mich. Const., Art. IV, Sec. 40 .............................................................................33

## I.    INTRODUCTION

Plaintiffs packed for Orlando but arrived in Ottawa – their brief is full of things they don't need and missing things they really do. Plaintiffs focus myopically on their own trial testimony and glossily on summary judgment. There were two live trial issues: (1) whether five obscure zoning provisions were sufficiently tailored under *Central Hudson,* and (2) remedy. Liability was otherwise ascertained pre-trial. In response to PTP arguments unpacking those rulings, Plaintiffs exaggerate, generalize, and mislead. Contextomy obscures the dearth of support for their legal theories – Plaintiffs quote selectively from inapt or unsupportive cases, lending their assertions the illusion of legitimacy; pre-PTP deposition snippets displace the ordinance and its legislative history. Plaintiffs contend their testimony on damages rehabilitates flimsy summary judgment liability rulings. Their appeal squeezes in two newly-contrived due process theories and another shot at the holy grail – commercial event-hosting – now clothed as "product demonstrations" and "traditional accessory uses."

Missing is evidence of constitutional injuries – Plaintiffs only show frustration with their land use permit compliance obligations and lionize scofflaws as civil rights victims. They conflate non-amendment of zoning with "enforcement" – a term wielded sweepingly, collectively, and inaccurately.

This case got Plaintiffs $50 million but not the new zoning they want. Their case tests the facial validity of provisions that were repealed but live on through approved land uses. This case cannot reconcile each Plaintiff's vested non-conforming rights nor amend zoning – only the Township can. The Court should uphold the challenged zoning provisions so the people of Peninsula Township can resume the messy and imperfect but democratic local zoning process.

## II.    REPLY TO PLAINTIFFS' RESPONSES
### A. Plaintiffs misunderstand "enforcement."

Injury is foundational to Plaintiffs' case – finality, standing, damages and more require it. Plaintiffs try but fail to establish it by pointing generically to Township "enforcement" without key details – who took what action to compel compliance with which provision? (Plaintiffs Brief, *passim*) *See* Black's Law Dictionary (11th ed. 2019) ("enforcement" is "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement"). Responses to zoning inquiries are not "enforcement" – just information and possibly notice. Informing a winery of an apparent violation also is not "enforcement," it is notice and invites a response. *See Grand v. City of University Heights,* 159 F.4th 507, 514 (6th Cir. 2025) (cease-and-desist letter "is not an enforcement action" and "does not harm" plaintiff (citing

*Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 349 (2nd Cir. 2005) (cease-and-desist order "did not inflict an immediate injury")).

The "enforcement" evidence fits into four buckets. *First*, actual enforcement. Peninsula Township issued three citations to Bonobo in 2016 for hosting Guest Activity Uses (GAU) without GAU approval in SUP 118, which resolved in 2017 by Settlement Agreement. (RE **457-8, 457-9, 611-32, 611-33**) The Township contemplated but never executed real enforcement against Bowers Harbor to address systemic non-compliance with its pre-Winery-Chateau "Special Open Space Use" SUP 32. (RE **611-55, 611-52,** Page ID ## 26271-26272; **611-57**) *Second,* Township staff responding to winery inquiries – Plaintiffs testified verbosely about these exchanges. (RE **136-19, 136-20, 611-117**) *Third*, Township staff notifying wineries of alleged violations, which produced voluntary compliance but not citations or punishment. (RE **517-40**, **517-23, 611-13, 611-35**, **611-37, 611-52**, Page ID # 26270; **611-78, 611-133**) *Fourth,* Township officials' (Manigold, Deeren, Sanger) testimony about what they "enforce." As discussed contextually below, they seemed to understand "enforce" as meaning a provision remains "in force" – an interpretation bolstered by the evidentiary dearth of formal, coercive, or punitive "enforcement."

13

### B. The First Amendment claims fail.

i. Commercial Speech

PTP comprehensively addressed how the five PTZO provisions deemed unconstitutional restrictions on commercial speech were appropriately tailored to advance Peninsula Township's substantial zoning interests and analyzed three main flaws in the court's *Central Hudson* analysis. (PTP Brief, pages 37-49) Plaintiffs' difficult-to-follow responses are addressed sequentially.

Plaintiffs defend the wrong provisions. (Order, RE **623**, Page ID ## 31455-31456) Sections 8.7.3(10)(u)(2)(b)-(c) and (5)(a) were not invalidated under the commercial speech claim; 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 6.7.2(19)(b)(1)(v) were. Plaintiffs lump these wrong provisions into three inaccurate categories, conceding that only 8.7.3(12)(k) actually restricts advertising. Plaintiffs entirely ignore 8.7.3(10)(u)(5)(h), 8.7.3(12)(i), and 6.7.2(19)(b)(1)(v).

Plaintiffs defend the invalidation of GAU "intent" provisions on the basis the Township enforced them as if they were operative law, citing only Deeren's and Manigold's deposition testimony in support. Their testimony is contradictory. Deeren testified that 8.7.3(10)(u)(1)(b) is enforced "[a]s part of the entire ordinance." (RE **611-151**, Page ID # 27763) When asked if 8.7.3(10)(u)(1)(b) "is still being enforced," Manigold responded incoherently: "I'm going to have to say yes until I've – if it's in the ordinance, the procedure is we would go and say, 'Hey,

14

we need to change this.' Then we'd work through it and change them all, in all the chateaus to be the same." (RE **611-154**, Page ID ## 27966-27967) While PTP was not present to object to these ambiguous exchanges, Deeren and Manigold seemed to acknowledge that 8.7.3(10)(u)(1) was "*in* force" – i.e., still law. Plaintiffs fail to explain *how* an intent provision *could* be "enforced" nor suggest that it was *actually* "enforced" – i.e., anyone was compelled to comply with it. It is illogical to fail the intent but not corollary operational provision.

Plaintiffs insist unidentified provisions restrict "advertising" not "commercial conduct" but do not explain *how.* Plaintiffs have never identified what *speech* is *restricted* by "these provisions."[1] Six years into litigation, this question remains unanswered.

Plaintiffs' response to PTP's argument that the court treated the Township's governmental interests too narrowly is misplaced. Like the court, Plaintiffs ignore Township enactments and Michigan precedent establishing its zoning interests as broad and compelling. (PTP Brief, pages 35-36) Instead, Plaintiffs point to Township interrogatory responses non-binding on PTP. (Order, RE **585**, Page ID # 22850; RE **577-2**) Those Township responses acknowledged its interest in supporting integrated

---

[1] PTP asked Plaintiffs to identify "all facts" supporting their First Amendment claims; each provided a conclusory list of provisions that "operate as unconstitutional restrictions" on its commercial speech rights but no facts. *See, e.g.,* Interrogatory Responses, **RE 457-4**, Page ID ## 16091, 16101, 16118.

agricultural production without changing the character of the district, which the court ignored in its *Central Hudson* analysis. (*Id.*; Opinion, RE **623**, Page ID ## 31461-31463)

Plaintiffs argue that Defendants presented insufficient evidence regarding *Central Hudson*'s third and fourth prongs. For each invalidated provision, PTP cited supporting evidence showing each was tailored to address real harms. For example, regarding two provisions authorizing branded merchandise sales, PTP presented about 50 pages of meeting minutes plus deposition and trial testimony from five witnesses supporting the Township's interest in bolstering the burgeoning winery industry by allowing winery merchandise sales and self-promotion while balancing those interests with community concerns about non-agricultural and nuisance activity in A-1. (PTP Brief, pages 40-41) Plaintiffs ignore the evidence and briefing, inexplicably concluding the issue is waived.

Plaintiffs instead lean on Manigold. They cite his testimony regarding 8.7.3(12)(j) and nonprofit meetings, which are not at issue. (RE **611-154**, Page ID ## 27934, 27976-79) They concurrently ignore Manigold's testimony regarding 8.7.3(12)(i), which *is* at issue: "the intent of the ordinance was to get that name out and brand out in the community and to work with our appellation to make us a very successful unit. And having that with a peninsula appellation or Peninsula Cellars is – means a lot in the community and it means a lot to people." (*Id.*, 28088-28089)

Plaintiffs cite Manigold attesting he could not think of any way 8.7.3(12)(k) promotes a government interest. (*Id.*, 27937) That does not mean 8.7.3(12)(k) promotes no government interest – Hayward testified its purpose was to promote zoning district consistency, and the record corroborates his testimony. (PTP Brief, pages 41-42) *See Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 394 (6th Cir.) (opinions, legal conclusions, interpretations of law are not judicial admissions).

Plaintiffs conclude by noting the court's findings on the "easiest way to support agriculture" rest on the demeanor of live witnesses but fail to respond to PTP's arguments about the flaws in the court's analysis. *See Greater Philadelphia Chamber of Commerce v. City of Philadelphia,* 949 F.3d 116, 143-44 (3rd Cir. 2020) (district court afforded insufficient probative value to pre-enactment record, erred in substituting its own factual predictions for city's); *see also Chesnut v. United States*, 15 F.4th 436, 441 (6th Cir. 2021) (lower court decision may be revered under clear error "even if the record contains some support for its finding.").

ii. Prior Restraint[2]

Plaintiffs' response to PTP's prior restraint appeal[3] ignores that hosting non-profit and agricultural group meetings is non-expressive, non-speech conduct[4] and fails to articulate how 8.7.3(10)(u)(2)(b)-(c) presented censorship risk. *See Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 508-509 (6th Cir. 2001). Their response also disregards the PTZO's plain language, which provides limited discretion to deny only ag-group meetings, with ample recourse. *See Brandon Township. v. Tippett,* 616 N.W.2d 243, 245 (Mich. App. 2000). Instead, Plaintiffs' response merely summarizes the court's erroneous analysis, which paraphrased Plaintiffs' first summary judgment brief, cherry-picking Deeren's testimony hypothesizing about zoning administration. (*See* Order, RE **559**, Page ID # 21910, citing Brief, RE **136**)

Regarding 8.7.3(10)(u)(2)(b), Deeren testified that she had not dealt with that section, and it does not require prior approval. (RE **469-2**, Page ID # 16999 (dep 52)) Like the court, Plaintiffs ignore that 8.7.3(10)(u)(2)(b) commands no approval;

---

[2] PTP inadvertently left prior restraint and compelled speech off its Statement of Issues. (PTP Brief, pages 11-14)

[3] Plaintiffs missed where PTP identified the specific prior restraint ruling PTP appeals. (PTP Brief, page 32)

[4] The court recognized these provisions are not content-based speech regulations because "they place regulations on the Wineries during certain activities." (Order, RE **559**, Page ID # 21907)

it was administered consistently. (*See* GAU Notifications, RE **615-12**, Page ID ## 29251-29264)

Regarding 8.7.3(10)(u)(2)(c), to determine whether a meeting of an agricultural-related group is agriculturally-related, Deeren would consider whether the group had a relationship to agriculture using information provided by the requestor. (RE **469-2**, Page ID ## 17000-17001 (dep 56-58)) Considering requestor-supplied information about ag-meetings assists rather than nullifies the mandatory guidance in 8.7.3(10)(u)(2)(c)(ii)(a)-(h) to ensure it fit within the GAU category. While Plaintiffs cross-reference citations to "prohibited events" and "unpermitted events," none are denials of GAUs. (*See* Briefs, RE **485**, Page ID ## 18539-18540; RE **488**, Page ID ## 18945-18946; RE **499**, Page ID ## 19288-19290) There is no evidence Deeren ever considered let alone denied an agricultural group meeting request, and Plaintiffs cite no contrary evidence. Brys testified it hosted "Michigan Environmental Agricultural Insurance" at one point but generally found ag-related group meetings insufficiently lucrative. (RE **517-24**, Page ID # 21081 (dep 75)) Chateau Chantal could not recall ever requesting approval for a meeting of an ag-related group. (RE **517-10**, Page ID # 20121 (dep 73); Dalese, RE **606,** Page ID # 24518) Mari had no documents indicating it was denied approval of any ag-related group meeting. (RE **517-53**, Page ID # 20391 (dep 106))

19

Regarding 8.7.3(10)(u)(2)(a),[5] Deeren testified that wine and food seminars and cooking classes "do not need my approval" and confirmed that the "only thing" she would approve for those relates to "the number of guests." (RE **469-2**, Page ID ## 16998-17000 (dep 49-51, 54-55))

Plaintiffs identified no risk of censorship associated with non-profit and agricultural group meetings notice and approval provisions.

### iii.  Compelled Speech

Plaintiffs' compelled speech claim is also a loser. In response to PTP's argument that this claim fails because no Winery-Chateau disagreed with the "Agricultural Production Promotion" component of GAUs (8.7.3(10)(u)(5)(a)), Plaintiffs argue message disagreement is immaterial under *United States v. United Foods, Inc.,* 533 U.S. 405 (2001) and *Delano Farms Co. v. California Table Grapes Comm'n,* 318 F.3d 895 (9th Cir. 2003). These cases undermine Plaintiffs' contention. Both considered the constitutionality of mandatory assessments to fund product advertisements ("compelled-subsidy"), which is distinct from Plaintiffs' "compelled-speech" claims. *Johanns v. Livestock Marketing Ass'n,* 544 U.S. 550,

---

[5] The court initially concluded 8.7.3(10)(u)(2)(a) was an unconstitutional prior restraint but subsequently held it implicates no speech. (Orders, RE **162**, Page ID ## 6012-6014; RE **559**, Page ID # 21909)

20

557 (2005). And the plaintiffs in both cases disagreed with the subsidized generic messages. *United Foods,* 533 U.S. at 411; *Delano Farms,* 318 F.3d at 897; *see also Johanns,* 544 U.S. at 557 (both compelled-subsidy and compelled-speech claims arise when someone is obligated to express or subsidize "a message he disagrees with"). No Winery-Chateau has been compelled to express any message it otherwise would not. *See Cressman v. Thompson,* 798 F.3d 938, 963-64 (10th Cir. 2015) (compelled-speech analysis focus is not the fact that the required action is speech but that the particular ideas expressed alter the speaker's own message).

In response to PTP's argument that Plaintiffs are not compelled to speak because activity-hosting is voluntary, Plaintiffs argue the Township cannot condition receipt of a benefit on limiting free speech. Plaintiffs misunderstand that compelled speech requires actual compulsion. *Wilkins v. Daniels,* 744 F.3d 409, 415-16 (6th Cir. 2014) (no compulsion where state mandated no penalties coercing an individual to choose a course of conduction); *Bristol Myers Squibb Co. v. Secretary of United States HHS,* 155 F.4th 245, 266 (3rd Cir. 2025) (no compulsion where plaintiff voluntarily chose to participate in program with speech requirements); *Virginia State Conference NAACP v. County School Board of Shenandoah County,* 799 F.Supp.3d 515, 554-55 (W.D. Va. 2025) (surveying cases; "Putting these Supreme Court and circuit precedents together demonstrates that penalties like incarceration and fines certainly cross the threshold for compulsion, while passive mechanisms, mere

21

criticism, and options for compliance fall short of the threshold for compulsion."). Plaintiffs cannot identify any punishment for non-participation in GAUs or its promotional components because there is none. *See Bristol Meyers Squibb,* 155 F.4th at 266 (rejecting argument that program imposed unconstitutional condition on voluntary government benefit; "any speech compulsion does not reach outside the contours of the Program.").

Plaintiffs cite no precedent finding a law unconstitutionally compelled speech where the plaintiff agreed with the message and suffered nothing for non-participation.

### C. The due process claims fail.

Plaintiffs litigate their due process claims as if each step in this case was an opportunity to present a revised version after Defendants pointed out the flaws in previous drafts. They originally claimed it was unclear what constitutes a "Guest Activity" prohibited under the PTZO. (RE **29**, Page ID # 1121) The court found it unclear whether GAUs include more activities than those identified in 8.7.3(10)(u)(2). (Order, RE **162**, Page ID ## 6016-6019) Post-trial, Plaintiffs claimed confusion over what GAUs are *not* – i.e., entertainment and accessory uses. (*See* Plaintiffs' Post-Trial Brief, RE **618**, Page ID # 31018) On appeal, Plaintiffs invent and defend an "alternative" "as-applied ruling." (Plaintiffs Brief, pages 13, 35-36)

22

Plaintiffs mislead right out of the gate. The court did not find that the "GAU regulations were unconstitutionally applied to the Winery-Chateaus" for due process liability purposes; it concluded that the Winery-Chateaus "were subject to" GAU regulations and (vaguely) that *all* "the Wineries" had shown that "the law" had been or was likely to be unconstitutionally applied to them for purposes of determining causation for damages. (*Id.*; Opinion, RE **623**, Page ID # 31423 n.6, 31476, quoting *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014)).

Defendants waived nothing by not appealing a nonexistent liability ruling. *See Bannister v. Knox Cty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) (waiver requires intentional abandonment). Plaintiffs, however, forfeited any "as-applied" due process theory by not developing it before the court resolved their due process claims. *Id.* at 1011-12 (forfeiture results from failure to timely assert claim or argument); *see also Buetenmiller v. Macomb County Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (forfeiture results when issues are raised perfunctorily, "'unaccompanied by some effort at developed argumentation'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

Plaintiffs chose a litigation strategy, brought due process claims alleging that the vagueness of "Guest Activity" in 8.7.3(10)(u) chilled speech, and developed their claims through argument and evidence until the court resolved them on summary judgment. Defendants properly proceeded to trial with an understanding of its scope

grounded in the court's pre-trial due process ruling. *See Arizona v. California*, 460 U.S. 605, 618 (1983); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990); *see also Kehoe Component Sales Inc. v. Best Lighting Products*, 796 F.3d 576, 596 (6th Cir. 2015) (plaintiff may not "submit an assortment of evidence at trial and determine only afterwards which legal allegations fit the evidence").

Plaintiffs attempt a bait-and-switch: pursue a facial due process challenge and bypass finality, standing, claim accrual, and other requirements until trial; then use damages testimony to conjure an after-trial as-applied due process liability ruling. The court could not create a post-trial as-applied vagueness challenge that Plaintiffs never pleaded, developed, or argued. *See Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 554 (6th Cir. 2022); *see also Brenay v. Schartow*, 709 F. App'x 331, 336-37 (6th Cir. 2017) (collecting cases).

*Ortiz v. Jordan,* 562 U.S. 180 (2011), cannot spare Plaintiffs from the consequences of their chosen litigation strategy. *Ortiz* addressed whether a party could appeal the *denial* of summary judgment on an issue that was subsequently tried – it held the trial record controls when a genuine issue of material fact existed for trial. *Id.* at 183-184, 188-192; *cf. Paschal v. Flagstar Bank, FSB*, 295 F.3d 565, 572 (6th Cir. 2002) (appellate review allowable for denial based on "pure question of law"). But a *grant* of summary judgment means there is no factual dispute, so the

issue is resolved and not tried. *See Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983) (summary judgment "eliminate[s]" unnecessary trial).

Plaintiffs try to resurrect their First Amendment hook by pointing to the court's First Amendment rulings, some of which involved GAU subsections. But the relevant inquiry would be whether confusion about "Guest Activity" chilled speech, not whether some 8.7.3(10)(u) subsections regulate speech. (Complaint, RE **29**, Page ID #1121) Whether 8.7.3(10)(u)(5)(h)'s limitation on outdoor displays during Chateau Chantal's wine and food pairings restricts commercial speech has no bearing on whether Mari's confusion about whether a wedding qualifies as a wine and food seminar chills speech. Plaintiffs' vagueness challenge hinged on their theory that hosting private commercial events is protected First Amendment activity, which rightly failed; so must their dependent vagueness challenge.

Plaintiffs fault PTP for not previously developing its argument that the court applied the wrong level of scrutiny, citing PTP's motion for reconsideration of the court's order declining to vacate its summary judgment rulings. That motion did not squarely address the merits of Plaintiffs' due process claims – only the merits of the court's decision denying PTP the opportunity to do so. (PTP Brief, RE **308**; Order, **RE 319**) This appeal is PTP's first opportunity to address the merits of Plaintiffs' due process claims.

25

Plaintiffs cite *Hoffman Estates v. Flipside, Hoffman Estates* for the irrelevant premise that vague laws can be challenged facially even if they are not overbroad – Plaintiffs did not bring an overbreadth challenge, and PTP never said vague laws could not be challenged facially. What PTP said, and what *Flipside* says right after Plaintiffs' out-of-context quote, is that a law that "implicates no constitutionally protected conduct" is only facially invalid if "impermissibly vague in all of its applications," necessitating that it first be vague as applied to the plaintiff bringing the challenge. 455 U.S. 489, 494-95 (1982). Plaintiffs' observation that laws "can also be vague as applied" does not remedy their failure to plead, argue, and prove that 8.7.3(10)(u) was. (Plaintiffs Brief, page 39)

Plaintiffs failed to raise before the court their next two arguments – that the GAU provisions "do not provide clear standards" and "encourage arbitrary enforcement" – so forfeited them. (Plaintiffs Brief, pages 39-42) *Bannister*, 49 F.4th at 1011. On summary judgment, they argued only that the Township admitted vagueness, citing purported evidence of Township officials' confusion; at no point did they identify any supposedly vague PTZO language, discuss the standards or lack thereof in the PTZO, or suggest that the PTZO encourages arbitrary enforcement. (Brief, RE **136**, Page ID ## 4747-4750; Reply, RE **145**, Page ID # 5643; Response, RE **146**, Page ID ## 5742-5743)

26

These arguments also fail. Plaintiffs first find conflict between Defendants' presentation of the PTZO text setting forth the three permissible categories of GAUs and the Township's response to Plaintiffs' summary judgment motion. Notwithstanding that a legal brief cannot render clear ordinance text unconstitutionally vague, any unclarity in the Township's brief and referenced deposition testimony likely resulted from Plaintiffs' muddled due process claims, which challenged a term – "Guest Activity" – absent from the PTZO except as part of "Guest Activity Uses." As spoken during depositions, it might have referred formally to "Guest Activity Uses" or colloquially to "guest activities,"[6] creating fertile ground for semantic misunderstanding, which Plaintiffs consistently exploit. Here, for example, the "good-faith examples" language Plaintiffs reference is from Grant Parsons's deposition answering questions about activities that are *not* GAUs. (RE **142-4**, Page ID # 5129)

Plaintiffs next cite statements by former Township attorneys. Notwithstanding that, like briefs, these statements cannot render clear text vague, the first supports PTP's position. Attorney Wendling, writing to the Zoning Board of Appeals (ZBA) to supplement Planner Reardon's request for clarification on what activities are

---

[6] PTP was unrepresented at these depositions.

27

permitted in Winery-Chateau tasting rooms "*not* as part of a Guest Activity Use,"[7] (RE **136-19**, Page ID # 4915 (emphasis added)) confirmed that subsection 8.7.3(10)(u)(2) "clearly show[ed] activities that are allowed" as GAUs and that it appeared "clear" that subsection 8.7.3(10)(d)(1) allowed wine tasting and events like political activities, tours, and free entertainment. (RE **136-20**, Page ID # 4917) Wendling sought clarification only on the narrow issue of the scope of the prohibition on receipt of a "fee or donation" for events that are *not* GAUs – an issue Plaintiffs never raised. (*Id.,* 4917-4918) The second is attorney Meihn's noncommittal observation that the PTZO could use some "fine-tuning" in response to Plaintiffs' counsel's identification of two PTZO subsections as potentially vague, neither of which related to the nature of GAUs – 8.7.3(10)(u)(4) addressed the number of attendees, and Plaintiffs' counsel's issue with 8.7.2, which lists all permitted "Miscellaneous Special Uses," related to Remote Winery Tasting Rooms. (RE **611-149**, Page ID # 27733)

Plaintiffs then selectively quote Township officials expressing confusion in their depositions, ignoring that misunderstanding and even "bungled" implementation does not render clear ordinance text unconstitutionally vague. *600*

---

[7] Chateau Chantal and Mari opposed the ZBA's proposed interpretation. *See* Letters, RE **499-13**, Page ID ## 19438-19442; Minutes, RE **499-14**, Page ID ## 19445-19447.

*Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 587 (6th Cir. 2013).

Next, Plaintiffs cite PTZO text for the first and only time, apparently borrowing from PTP's acknowledgment that the PTZO "might have been clearer that 8.7.3(10)(u)(1)(d) listed permissible activities and 8.7.3(10)(u)(2)(d) listed generally impermissible activities," but ignoring PTP's point that the listed activities are unquestionably *not* GAUs. (PTP Brief, page 57) PTP already explained the apparent inconsistency Plaintiffs just discovered surrounding the inclusion of "sale of wine by the glass." (*Id.,* n.12)

Last, Plaintiffs mischaracterize the court's ruling as having "found . . . that the ordinance lacked standards." (Plaintiffs Brief, page 41) It says no such thing. The court only concluded, erroneously, that the ordinance must be vague if Township officials were confused about it. If confusion were the test, every complex law would be at risk of invalidation. Mere confusion does not indicate a lack of standards, nor that a law encourages arbitrary enforcement.

PTP fully refuted the argument that "Guest Activity" is vague; Plaintiffs add nothing new. (PTP Brief, pages 55-62)

### D. The dormant Commerce Clause claims fail.

Plaintiffs ignore PTP's main argument (the PTZO is non-discriminatory) and instead address an argument PTP did not make ("that in-state discrimination is permissible"). (Plaintiffs Brief, page 50) They isolate nine challenged subsections from a PTZO that is agnostic to grape-trafficking and allows out-of-state farmers unfettered access to OMP winemakers. *See Winchester v. WA Foote*, 396 N.W.2d 456, 462 (Mich. App. 1986) (zoning ordinances must be construed as a whole); *Morgan v. United States Department of Justice,* 473 F. Supp. 2d 756, 768 (E.D. Mich. 2007), *aff'd*, 509 F.3d 273 (6th Cir. 2007) (distinguishing zoning from commodity trafficking regulations); *Garber v. Menendez,* 888 F.3d 839, 843-44 (6th Cir. 2018) (defining economic protectionism).

PTP did not address *Alexis Bailly Vineyard, Inc. v. Harrington,* 482 F.Supp.3d 820 (D. Minn. 2020) because it is non-precedential and non-relevant. The Minnesota district court invalidated a statewide law permitting direct retail to Minnesota customers for winemakers using majority in-state grapes; winemakers using majority out-of-state grapes were ineligible. Unlike the Minnesota law, the PTZO leaves open multiple paths to sell non-local grapes and wine in the Township and requires no local grape-purchasing. Unlike Alexis Bailly Vineyard in Minnesota, Two Lads could sell wine made exclusively from Leelanau or Willamette grapes in

Peninsula Township as a Food Processing Plant, Winery-Chateau, Remote Winery Tasting Room in A-1, or in the commercial district.

The PTZO survives *Pike* balancing by legitimately ensuring A-1 land uses remain principally agricultural. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); *Garber,* 888 F.3d at 845 (noting that "the Court has not invalidated a law under *Pike* balancing in three decades."). Conditioning one of four winery land uses (Farm Processing Facilities) in A-1 on some modicum of agriculture (produce-growing), and limiting wine service at marginally-agricultural-events (GAUs) to the OMP appellation, is reasonable. (PTP Brief, pages 15-21, 27-28, 40) Peninsula Township enacted the challenged provisions not to burden interstate commerce in winemaking ingredients but to ensure community development consistent with its Master Plan, maintain compatible land uses in A-1, conserve natural resources, provide for food production, promote local agricultural production, and more. (*Id.*); MCL §§ 125.3201(1), 125.3203(1); PTZO 2.1, 6.7.1, 6.7.2(19)(a); PDR Ordinance, RE **615-7**, Page ID ## 28695-28696. The assertion that "protection of a local industry is exactly what the dormant Commerce Clause seeks to prohibit" misunderstands both zoning and the Commerce Clause: zoning regulates land uses according to their character and compatibility; the Commerce Clause protects interstate commerce. (Plaintiffs Brief, page 51, quoting Order, RE **162**, Page ID # 6000); *Greater Temple of Jackson v. City of Jackson*, 733 N.W.2d 734, 751-52 (Mich. 2007); *Energy*

31

*Michigan, Inc. v. Michigan Public Service Commission,* 126 F.4th 476, 485-86 (6th Cir. 2025).

Were it necessary under *Pike* balancing to retrospectively show the PTZO actually helped achieve the Township's zoning interests, as Plaintiffs assert, the record suffices: since enactment, five new wineries began as Farm Processing Facilities; three of those plus another established Winery-Chateaus; all eleven OMP wineries remain successful agricultural enterprises. (Plaintiffs Brief, page 51; Brief, RE **517**, Page ID ## 20016-20033; Opinion, RE **623**, Page ID ## 31428-313434, 31445-31452); *Patchak v. Lansing,* 105 N.W.2d 406, 410 (Mich. 1960) (test of zoning is not whether property could more valuable but whether land was suitable as classified). Plaintiffs presented no evidence that the PTZO burdens interstate commerce nor that any such burden outweighs local benefits. *Garber,* 888 F.3d at 845.

Plaintiffs rebuff available grape-sourcing options (grape-growing, multiple land uses) by noting there is no record "more farmland was available" and that opting for an alternative land use implicates unconstitutional conditions. Plaintiffs do not explain how these allegations undermine PTP's non-discrimination argument – the PTZO allows Peninsula wineries to buy no grapes or only non-local grapes. PTP had no opportunity below to evaluate farmland availability. Winery-Chateaus need not give up rights or become Farm Processing Facilities to make non-appellation wine

and host GAUs – Chateau Chantal has done both for decades. (Dalese, RE **607**, Page ID # 24604-24605; GAU Notifications, RE **615-12**, Page ID ## 29250-29264) The unconstitutional conditions doctrine is misplaced here – the PTZO regulates only land uses, impairs no identifiable constitutional rights, and imposes no conditions beyond defining A-1 land uses to remain principally agricultural. *See Daunt v. Benson,* 956 F.3d 396, 412-13 (6th Cir. 2020).

### E. The catering and music preemption claims fail.

The MLCC controls alcohol beverage trafficking – not food, kitchens or their location, food catering, food catering kitchens or their location, etc. Mich. Const., Art. IV, Sec. 40; MCL § 436.1547. Section 8.7.3(10)(u)(5)(9) does not regulate beverage trafficking, it limits off-site food catering from A-1 winery kitchens approved for GAUs. These are neither inconsistent nor irreconcilable laws. *See National Amusement Co. v. Johnson,* 259 N.W. 342, 343 (Mich. 1935). Moreover, MLCC licensee "shall comply" with local zoning ordinances. Mich. Admin. Code R. 436.1003(1); *Allen v. Liquor Control Comm.*, 333 N.W.2d 20, 21 (Mich. App.1982); *see, e.g.,* Approvals, RE **615-26**, Page ID # 30458; RE **615-27**, Page ID # 30530; RE **356-1**; RE **517-9**, Page ID # 20108; RE **517-55**, Page ID # 20412. The MLCC does not regulate all commercial activities at establishments where alcohol is sold or consumed. *Mutchall v. Kalamazoo,* 35 N.W.2d 245, 248-49 (Mich. 1948);

33

*Oppenhuizen v. Zeeland*, 300 N.W.2d 445, 448 (Mich. App. 1980) (municipality has authority to control commercial activity but not ban liquor sales).

Plaintiffs counter that an MLCC catering permittee must also be a licensed food service establishment under, and comply with, the Michigan Food Law, MCL 289.1101 *et seq*. MCL § 436.1547(1)(b), MCL § 436.1547 (11). Requiring MLCC-permitted beverage caterers to comply with the Food Law does not render the PTZO provision limiting the use of winery kitchens for off-site catering preempted by the MLCC. Plaintiffs *are* licensed food service establishments and *do* provide food service at their facilities, per their authorized uses. *See* MCL § 289.1107(t) ("food service establishment" means just about anywhere food or drinks are served or provided to the public); *see, e.g.,* Food Establishment Licenses, ECF **611-44**, Page ID # 26151; **611-73**; **611-83**. Thus, 8.7.3(10)(u)(5)(i) is not an impediment to MLCC catering permit eligibility. Bonobo may distribute its wine via its MLCC catering permit and not operate a food catering service from its licensed winery kitchen – these provisions do not conflict. Moreover, the MLCC Catering Permit Approval Order expressly obligates Bonobo to comply with zoning: "Under administrative rule R 436.1003(1), the licensee shall comply with all … local … zoning … laws, rules, and ordinances ….  Approval by the Michigan Liquor Control Commission does not waive these requirements." (Order, RE **615-18**, Page ID # 29865).

34

There is also no conflict between the MLCC and PTZO related to instrumental music amplification. Plaintiffs inaccurately quote 8.7.3(10)(u)(5)(g),[8] which authorized Winery-Chateaus hosting GAUs to provide instrumental music and amplified voice and recorded background music, not amplified instrumental music.[9] The PTZO does not limit amplification in tasting rooms, only during the private ticketed events authorized as a limited additional support use for Winery-Chateaus. If Mari rents facilities to the Father Fred Foundation or 4-H for a meeting, 8.7.3(10)(u)(5)(g) allows an amplified speaker but not an amplified band. MCL § 436.1916(11) clarifies that, while other forms of on-MLCC-premises entertainment (e.g., late-hour monologues, closed circuit television) require an MLCC permit, musical instrument performances and public television broadcasts do not—it mandates nothing. The MLCC is agnostic on amplification and does not regulate noise levels but is dogmatic on zoning and obligates licensees to comply with it, as discussed *supra*.

Plaintiffs argue Peninsula Township "enforced a 'complete prohibition on amplified music.'" (Plaintiffs Brief, page 53) Putting aside glaring ambiguity, authority, and accuracy questions, so what? A complete prohibition on amplified

---

[8] 8.7.3(10(u)(5)(g) stated, "No amplified <u>instrumental</u> music is allowed, …." (emphasis added). *See* Plaintiffs Brief, page 52 (omitting "instrumental").

[9] This provision would not apply to other authorized Winery-Chateau principle and accessory uses.

music in tasting rooms or township-wide still would not conflict with the MLCC, which allows instrumental music performances but is silent on amplification. *See DeRuiter v. Byron Twp.,* 949 N.W.2d 91, 99-100 (Mich. 2020) (discussing cases, treatise recognizing no conflict preemption where local ordinance does not "forbid what the legislature has *expressly* licensed, authorized, or required") (*quoting Miller v. Fabius Twp.*, 366 Mich. 250, 256-67 (1962), quoting 37 Am. Jur., Municipal Corporations, § 165 p. 790; emphasis in original). Even if there were an amplification ban, an MLCC-licensed tasting room could provide unamplified instrumental music – no contradiction with the MLCC, only differences in detail. *Id.*

Plaintiffs argue "amplified" is implied in MCL § 436.1916(11) because "playing" recorded music and electric guitars "require" amplification. (Plaintiffs Brief, page 53) Section 916(11) makes sense as drafted: MLCC licensees may host someone performing or "playing" the piano or piccolo without an entertainment permit; implied amplification is unnecessary and contorted. There is neither reason nor authority to fill the statutory silence with a gratuitous adjective. *See Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 446-47 (6th Cir. 2004).

### F.  Most Plaintiffs lack standing.

Plaintiffs assert that every Winery-Chateau was subject to and could challenge GAU provisions, but fail to provide Plaintiff-, claim-, and provision-specific

evidence. *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008). Plaintiffs say the court made factual findings on standing that are subject to clear error review, citing two statements from the Bench Opinion: (1) the Township "enforced the Winery Ordinances against all the Wineries" –adopted verbatim from Plaintiffs' unsupported proposed findings (Plaintiffs Proposed Findings of Fact, RE **580**, Page ID # 22631); (2) all Winery-Chateaus were subject to "guest activity regulations in 8.7.3(10)(u) and 8.7.3(10)(m)."[10] (Plaintiffs Brief, page 25 (citing Opinion, RE **623**, Page ID ## 31422, 31423 n.6) *Voilà*, five Winery-Chateaus have standing.

There are four problems with Plaintiffs' reliance on these two drive-by statements. *First*, these are fact-less conclusions, not factual findings. Standing is reviewed *de novo*, with the burden on the party invoking jurisdiction. *See Shearson v. Holder,* 725 F.3d 588, 592 (6th Cir. 2013).

*Second,* both statements are too vague and general to support specific standing determinations. It may be true enough that the Township expected wineries to comply with the PTZO provisions that were applicable to each, but that is insufficient basis to conclude the Township took any actual enforcement action

---

[10] It is ironically vague what "guest activity regulations" here means – "guest activity" colloquially (activities for guests) or Guest Activity Uses? Also unclear is why the court and Plaintiffs cited 8.7.3(10)(m), which predated Guest Activity Uses by 14 years, does not regulate Guest Activity Uses, and is not the subject of any ripe legal challenge.

against any Plaintiff. And while every Winery-Chateau was "subject to" 8.7.3(10)(u) in the sense that each could apply for an SUP with GAUs, that does not mean each was "subject to," say, promotional standards in 8.7.3(10)(u)(5) or outdoor display limitations in 8.7.3(10)(u)(5)(h). Being "subject to" zoning does not equal the Township applying specifically-challenged provisions to each Winery. (*See* Order, RE **162**, Page ID # 5985 n.7)

*Third*, even if the five Winery-Chateaus were genuinely confused by or scared of violating 8.7.3(10)(u), that is still insufficient to conclude each suffered an actual, redressable injury caused by 8.7.3(10)(u) to confer standing to pursue all pleaded claims. *See Grand,* 159 F.4th at 514. Long-term confusion is self-imposed – PTZO 5.7.2 provides for formal interpretation. Fear of getting caught is self-inflicted injury.

*Fourth,* clear error is inapplicable – standing was resolved on summary judgment; review is *de novo*. *Phillips v. DeWine,* 841 F.3d 405, 413 (6th Cir. 2016). Post-trial findings to support damages cannot retroactively rehabilitate pre-trial standing rulings, absent fair notice. *See Todd*, 920 F.2d at 403; *Kehoe Component Sales*, 796 F.3d at 596.

Next, Plaintiffs defend the court's erroneous finding that Bonobo had GAUs authorization by reiterating Oosterhouse's self-serving testimony and an email that at best suggests the Ordinance Enforcement Officer was misinformed about Bonobo's SUP contents. (Plaintiffs Brief, page 25 (citing RE **611-35**, Page ID #

38

25837)) Township staff could not inadvertently amend an SUP, and the objective and superior record evidence confirms Bonobo's SUP 118 lacks GAU authorization. (PTP Brief, pages 78-79)Regarding Chateau Grand Traverse, Plaintiffs cite the court's baffling finding that there is confusion whether it is subject to Winery-Chateau provisions.[11] Apparently, the court and Plaintiffs still misunderstand that Chateau Grand Traverse is a Winery-Chateau without GAU authorization – it obtained its operative SUP 66 in 1999, six years before Amendment 141 created GAUs, and never subsequently sought an amended SUP to include them. (Brief, RE **517**, Page ID ## 20016-20017; Joint Defendants' Proposed Findings of Fact, RE **583**, Page ID ## 22826-22827; Opinion, RE **623**, Page ID # 31421, 31466; Ex O7, SUP 66, RE **615-18**, Page ID ## 29913-29930)

Regarding the court's post-trial standing reversal, PTP never said the court lacked authority to change prior rulings, only that doing so post-trial without notice denied Defendants a full opportunity to litigate the issue. Plaintiffs miss the discussion in *Leelanau Wine Cellars v. Black & Red, Inc.,* requiring a court to give parties notice and an opportunity to respond before modifying a ruling. 118 F. App'x 942, 948 (6th Cir. 2004). Plaintiffs again cite *Ortiz* for the premise that the trial record supersedes the summary judgment record, ignoring that it applies only where

---

[11] This finding conflicts with the finding that "all the 'Winery-Chateaus' were subject to [GAU provisions]." (Opinion, RE **623**, 31447, 31423 n.6, 31476)

summary judgment was *denied.* 562 U.S. at 188-92. Here, the court *granted* PTP summary judgment that five Winery-Chateaus lacked standing to pursue as-applied claims under 8.7.3(10)(u), thereby *narrowing* the scope of trial. *Dupree v. Younger* held that trials "leave pre-trial legal rulings undisturbed," further undercutting Plaintiffs' argument – standing is a legal issue. 598 U.S. 729, 735-36 (2023). Moreover, the mid-trial evidentiary ruling Plaintiffs reference was not "notice" that standing was fair game. The Township objected to certain Oosterhouse testimony because the court had already ruled that Bonobo lacked standing to challenge 8.7.3(10)(u). The court overruled the objection after Plaintiffs' counsel acknowledged that the court had already resolved the vagueness claims and represented that the evidence went toward "causation and damages." (Transcript, RE **600**, Page ID ## 23033-34)

Regarding Black Star and Bonobo conservation easements, Plaintiffs rely on generalized trial findings mentioning accessory uses in relation to agriculture, and PTZO provisions discussing agricultural uses for zoning purposes, without considering whether the additional uses Plaintiffs seek through this litigation are agricultural *within the meaning of the conservation easement*s. They are not. Plaintiffs also ignore that, for Farm Processing Facilities like Black Star, retail sales and tasting are limited to winery-related promotional merchandise and wine produced with majority onsite-grown grapes – or were until their lawsuit upended

40

those provisions. PTZO 6.7.3(19)(b)(1)(v), 6.7.3(19)(b)(2)(I); Opinion, RE 623, Page ID # 31482. Plaintiffs assert without citation that the easements intend to allow "accessory uses"– a term Plaintiffs believe should include private facility rentals, limitless retail and produce-sourcing, and more. This assertion contradicts the plain language of the easements defining permissible agricultural and open space uses. *See Livonia v. Dept. of Social Services,* 378 N.W.3d 402, 430 (Mich. 1985). Per trial damages evidence, which was previously unavailable to PTP, Bonobo's planned commercial activities would generate over $1.2 million annually, belying that these are simply uses "customarily incidental and subordinate to" wine production. PTZO 3.2; Opinion, RE **623**, Page ID # 31479. Plaintiffs' apparent logic – that wine sales are commercial and allowed so commercial facility rentals must be, too – would equally cover convenience stores and hotels. Whether contextless findings about unidentified "activities" were "clearly erroneous" is the wrong question here.

Plaintiffs suggest, and the court found, that the Township "conceded" Tabone is a Farm Processing Facility, citing two pre-PTP Township briefs. (Plaintiffs Brief, page 29) The Township's citationless briefing, which apparently reflects attorney error, cannot make Tabone into something it is not. *See MacDonald v. GMC,* 110 F.3d 337, 341 (6th Cir. 1997). Moreover, the court erred in disregarding the decisive record – Tabone never produced any Farm Processing Facility land use permit. Township meeting minutes show Tabone fleetingly pursued Farm Processing Facility approval

41

on June 9, 2016, (RE **615-26**, Page ID # 30474); 12 days later, it notified the Township it was withdrawing the request and would continue "operations outlined by SUP 73" – a *Food* Processing Plant permit. (*Id.*, 30478) Plaintiffs inexplicably ignore this evidence.

Plaintiffs oddly argue *PTP* tried to override Township concessions at trial, citing Tabone's trial testimony. (Plaintiffs Brief, page 29) Unlike Plaintiffs, PTP appropriately treated the court's summary judgment ruling as final until appeal. *See Arizona*, 460 U.S. at 618.

### G. Most Plaintiffs' claims are time-barred.

#### i. Statute of Limitations

Only Bowers Harbor and Hawthorne brought timely claims – every other Plaintiff had a complete and present cause of action when they first became subject to allegedly-unconstitutional zoning provisions. *See Corner Post, Inc. v. Board of Governors of the Federal Reserve System,* 603 U.S. 799, 810-11 (2024); *Thomas v. Copeland,* 758 Fed. Appx. 377, 381 (6th Cir. 2018). Illustratively, Chateau Chantal could have obtained complete relief within three years after December 14, 2004, when Peninsula Township approved amendments to SUP 95 authorizing Chateau Chantal to host GAUs subject to the restrictions in 8.7.3(10)(u). Hypothetically, Chateau Chantal might have alleged some additional, injurious Township act since

42

October 2017 – e.g., if the Township denied approval for a farming seminar under 8.7.3(10)(u)(2)(c) because it disliked the speaker. But Chateau Chantal challenged no specific zoning enforcement acts, it challenged zoning provisions facially[12] and generically, complaining about the present *effects* of decades-old zoning enactments. Nine Plaintiffs' claims accrued before October 2017.

Plaintiffs do not dispute that their claims accrued upon land use permit issuance. To avoid the statute of limitations, Plaintiffs invoke the continuing violations doctrine to argue that limitations is no bar as long as unconstitutional zoning provisions remained operative. Plaintiffs cite no precedent applying the continuing violations doctrine to First Amendment, due process, or zoning challenges. Factually and legally inapposite is *Kuhnle Brothers, Inc. v. County of Geauga,* which involved a road closure that barred a trucking company's access to a quarry, actively depriving it of an undisputed liberty right vindicated by state court. 103 F.3d 516, 521-22 (6th Cir. 1997). *Virginia Hospital Association v. Baliles* found continuing violations where regulations were continuously enforced beyond the limitations period. *Virginia Hospital Association v. Baliles,* 868 F.2d 653, 663 (4th Cir. 1989). Subsequent cases limit *Baliles* to active enforcement. *See National Advertising Co. v. Raliegh,* 947 F.2d 1158, 1167 (4th Cir. 1991). *See also Bird v.*

---

[12] Plaintiffs pleaded as-applied First Amendment speech claims but failed to pursue them.

*Department of Human Services,* 935 F.3d 738, 744-45 (9th Cir. 2019) (distinguishing *Kuhnle* and *Baliles*). *Flynt v. Shimazu* addressed a facial dormant Commerce Clause claim filed two months after the limitations period expired. 940 F.3d 457 (9th Cir. 2019) In contrast to Michigan zoning, where lawful land uses vest, the plaintiffs were subject to biannual statutory license renewal and enforcement proceedings leading to civil fines and potential license revocation. *Id.*at 463-64, n.5. Notwithstanding obvious differences, to the extent the majority opinion in *Flynt* is irreconcilable with this Court's continuing violations precedent, this Court's opinions prevail. *See Tolbert v. State of Ohio Department of Transportation,* 172 F.3d 934, 940 (6th Cir. 1999); *Edison v. Tenn. Department of Transportation of Children's Services,* 510 F.3d 631, 635 (6th Cir. 2007).

Plaintiffs' attempt to meet the *Edison* test fails. *First*, the Township's allegedly-wrongful conduct was its approval of each Plaintiff's land or special use permit, subjecting each winery to the supposedly-offending zoning provisions. *Second*, Plaintiffs suffer (if anything) only the lingering effects of their permits. *Third*, to avoid further injury, the Township would have to (1) stop "enforcing" (administering) zoning, (2) repeal offending zoning, then (3) amend each winery's non-conforming permits to remove those provisions, which – because they authorize otherwise-unauthorized A-1 land uses – would result in fewer, not more, lawful activities. To authorize more, like facility rental for private events, the Township

44

would also have to (4) amend A-1 zoning, then (5) grant each Plaintiff amended permits.

Plaintiffs' invocation of trial findings[13] and evidence to bolster their continuing violations theory is unavailing for four reasons. *First*, the court granted summary judgment to Plaintiffs on statute of limitations – this affirmative defense was not tried. *Second*, Plaintiffs identified zero facts in discovery supporting claim timeliness – they uniformly attested that they were injured because the ordinance is unconstitutional. (Interrogatories, RE **457-4**, *passim*); Fed. R. Civ. P. 37(c)(1). *Third,* the (mis)quoted trial finding addressed continuing injuries, not wrongful conduct – lingering effects are insufficient. *See Tolbert,* 172 F.3d at 940.

*Fourth*, Plaintiffs' "enforcement" examples confirm their historical land use permits remained operative and enforce<u>able</u> post-issuance (i.e., continuing ill-effects), and the Township approached compliance informally. Manigold preferred to achieve compliance by talking with people. (RE **611-54**, Page ID ## 27968-69) Bonobo, Brys, Black Star, and Two Lads declined hosting certain events or parties after learning the Township considered them unauthorized. (RE **600**, Page ID # 23045-48, **611-37**; RE **603**, Page ID ## 23762-23771, **611-78**; RE **600**, Page ID ##

---

[13] Plaintiffs misleadingly quote adjacently two unrelated parts of the Bench Opinion, implying the court found injuries continued for decades, which was not its finding. (Plaintiffs Brief, page 33, quoting Bench Opinion, RE **623**, Page ID ## 31410, 31468)

23462-66; RE **608**, Page ID ## 24882-84) Peninsula Cellars received a letter notifying it of a complaint for playing unauthorized amplified music and requesting compliance. (RE **606**, Page ID ## 24371-73, **611-133**) Bowers Harbor received letters about pre-Winery-Chateau Dining in the Vines violations and an unauthorized food truck. (RE **605**, Page ID ## 24099-24100, RE **611-52, 611-55**) None demonstrates wrongful conduct by the Township. *See Grand,* 159 F.4th at 513 (cease-and-desist letter from staff, mayor insufficient where zoning enforcement was responsibility of Planning Commission, Board of Zoning Appeals). While such interactions could have led to wrongful conduct and new injuries had a winery pursued its options (PTZO 4.2.1, 5.7.2), none did. *See id.* at 514-15.

Plaintiffs' argument that, absent application of their continuous violations theory, unconstitutional laws risk becoming immunized for all time, is misplaced for three reasons. *First*, Bowers Harbor and Hawthorne have timely claims. *Second,* Plaintiffs cite incongruous precedent where old laws inflicted new injuries. In 1951 – 55 years after the Supreme Court announced the so-called "separate by equal" doctrine, Oliver Brown sued because his eight-year-old daughter Linda was being barred from attending nearby Sumner Elementary and instead bussed two miles away to Monroe Elementary. *See Brown v. Board of Education of Topeka,* 347 U.S.

483 (1954).[14] After a state licensing officer invoked a 1905 law to deny Robert Nash

a license to carry a handgun in public in late 2016, Nash sued in early 2018. *See New*

*York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1, 16 (2022). *Third,*

Plaintiffs' argument discounts their own agency – each had three years after being

injured to sue. *See also Herr v. U.S. Forest Service,* 803 F.3d 809, 821-22 (6th Cir.

2015). Otherwise, Peninsula Township and its residents are entitled to the repose

provided by the limitations period. *See United States v. Kubrick,* 444 U.S. 111, 117

(1979).

ii.  Laches

Because the court granted summary judgment to Plaintiffs concluding PTP's

laches defense was inapplicable in this case, PTP had neither opportunity nor

obligation to make an offer of proof at trial regarding laches –doing so would have

wasted judicial resources. *See Barrett v. Baylor,* 457 F.2d 119, 123 (7th Cir. 1972);

*Todd*, 920 F.2d at 403. *Morales v. American Honda Motor Company,* which found

no harm resulting from the improper exclusion of an expert report in a jury trial, is

inapplicable factually and procedurally. *Morales v. American Honda Motor*

*Company,*151 F.3d 500, 514 (6th Cir. 1998).

---

[14] Douglas O. Linder, *The Brown v. Board of Education of Topeka Trial: An Account*, FAMOUS TRIALS, https://famous-trials.com/brownvtopeka/666-home (last visited May 14, 2026).

Plaintiffs do not explain how "the Township's own process" – a preference for collective negotiations regarding new zoning amendments, the former Township attorney's 2019 memorandum acquiescing in some of Plaintiffs' legal theories – excused their years-long delay before challenging the zoning ordinance. *See Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1476 (10th Cir. 1990); *Edel v. Filer Twp.*, 211 N.W.2d 547, 548-50 (Mich. App. 1973) ("When a zoning ordinance has been the subject of public acquiescence and reliance for this length of time, the reasonableness of a belated challenge is certainly open to question.") (collecting cases). Plaintiffs cite no precedent suggesting their excuse rendered their delay reasonable.

### H. The court erred in preventing PTP from fully defending Plaintiffs' claims.

Plaintiffs errantly argue that the court appropriately exercised its discretion to limit PTP intervention. Whatever discretion the court had was confined to the letter and spirit of this Court's opinions. *See United States v. Brighton Twp.*, 282 F.3d 915, 919 (6th Cir. 2002). Plaintiffs pursued a scattershot of legal theories unified by their goal of invalidating zoning. This Court recognized that litigation establishing the validity or invalidity of long-standing zoning bears directly on PTP members' property interests. *Wineries of Old Mission Peninsula v. Peninsula Twp.* (*WOMP I*), 41 F.4th 767, 773 (6th Cir. 2022). This Court further recognized that the court's

48

injunction rested on summary judgment rulings reflecting the Township's compromised advocacy. *Wineries of Old Mission Peninsula v. Peninsula Twp.* (*WOMP II*), 2022 U.S. App. LEXIS 23575 at *7, 2022 WL 22236853 (6th Cir. 2022). PTP appeals limitations – not imposed "to ensure efficient proceedings" (e.g., discovery limits) – sequestering two whole claims and one remedy from PTP. After this Court served PTP a full glass, the district court poured some out.

Contrary to Plaintiffs' argument, the court's intervention-limiting was inconsistent with this Court's rulings. PTP intervention depended not on how a particular legal theory impacted land values or quiet enjoyment but on the validity of zoning, which is (inherently) reciprocal and (here) longstanding. How can Plaintiffs' commercial speech claim threaten PTP members' interests but not their Commerce Clause claim, when both would redefine the same land uses? The court followed *WOMP II* and vacated its First Amendment rulings because of the Township's weak defenses but simultaneously maintained its due process and Commerce Clause rulings, notwithstanding similarly anemic Township defenses. (Orders, RE **301**, Page ID # 10697; **303**, Page ID # 10836; **319**) Even if Plaintiffs' due process and Commerce Clause claims were ironclad (they were not), the only incremental harm posed by vacating them and letting PTP discover and defend them would have been marginal litigation impacts that would have concomitantly ensured fair process consistent with this Court's opinions.

Plaintiffs mischaracterize this Court's damages discussion as holding PTP non-liable for damages. This Court discussed damages to illustrate divergent interests – Plaintiffs' massive monetary demand might motivate the Township to acquiesce in settlement, while Plaintiffs' claims threatened PTP differently. *WOMP I*, 41 F.4th at 776-77. Preventing PTP from accessing Plaintiffs' damages reports and litigating damages – while concurrently preventing any post-PTP damages defense rehabilitation by the Township – insulated Plaintiffs' obscene damages demand against any real defense. Rather than managing this litigation per the letter and spirit of this Court's opinions, the court unfairly and punitively limited PTP intervention.

Plaintiffs cite inapplicable precedent to support how the court limited PTP intervention. In *Friends of Tims Ford v. TVA*, intervention was not limited to the remedial stages of litigation, and this Court declined to consider whether limited intervention in NEPA would be appropriate. 585 F.3d 955, 963 n.1 (6th Cir. 2009). *United States v. City of Detroit* addressed limited intervention as an alternative to denying an otherwise-untimely motion to intervene. 712 F.3d 925, 931-32 (6th Cir. 2013). Plaintiffs ignore substantial precedent holding timely interveners like PTP are entitled to full participation. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967); *Ross v. Bernhard*, 396 U.S. 531, n.15 (1970); *Wolpe v. Poretsky*, 144 F.2d 505, 508 (DC Cir. 1944); *Leary v. United States*, 224 U.S. 567, 575-76 (1912); *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007,

1017 (D.C.Cir.1985); *United States v. Board of Education*, 605 F.2d 573, 576 (2nd Cir. 1979); *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986); *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir. 1978); *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981); *Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993); *Sanguine, Ltd. v. U.S. Dep't of Interior*, 798 F.2d 389, 391-92 (10th Cir. 1986).

Plaintiffs claim PTP showed no prejudice from intervention limitations, inexplicably ignoring 20 pages addressing numerous preventable due process, Commerce Clause, and damages errors. (PTP Brief, pages 53-72) *Morales* considered prejudice resulting from excluded evidence. 151 F.3d at 514. That is not this case – PTP had no opportunity to discover let alone offer evidence on due process, Commerce Clause, or damages.

Finally, Plaintiffs argue Amendment 201 repealing challenged provisions resolved PTP's interests. PTP's interests remain unchanged because all challenged provisions would remain operable post-repeal through Plaintiffs' SUPs and non-conforming uses, except that the court invalidated them. (PTP Brief, page 28; Orders, RE **518**, Page ID # 20738; **525**, Page ID # 21126)

51

## III.    RESPONSE TO PLAINTIFFS' CROSS-APPEALS

### A. Summary of the Argument.

The court rightly rejected Plaintiffs' argument that state liquor trafficking laws would preempt Township restrictions on winery operating hours because such a ruling would be contrary to Michigan precedent – Peninsula Township could restrict late-night hours of retail establishments in A-1 harmoniously with state law prohibiting early-morning liquor sales. Peninsula Township does not actually limit winery hours, which (further) sinks Plaintiffs' first cross-appeal and walks into their second cross-appeal, an operating-hours liberty interest substantive due process theory introduced at trial. The court rightly rejected Plaintiffs' new claim to avoid extreme prejudice to Defendants – a conclusion Plaintiffs cross-appeal ignores.

Plaintiffs' third cross-appeal argues the court should have ruled on their claim that state law allowing restaurants in small winemaker's tasting rooms preempts zoning that limits restaurants to the commercial district. Unlike their operating-hours due process claim, Plaintiffs obviously intended to pursue this claim – it was almost pleaded and fully briefed. PTP parts ways with Plaintiffs on the merits: Plaintiffs provide food service and are licensed "food service establishments" – state law requires nothing more than what Peninsula Township allows.

Finally, the court thrice rightly rejected Plaintiffs' argument that using their wineries as commercial events venues should be treated as "commercial speech"

protected by the First Amendment. Facilities rental is commerce – limiting it regulates no speech.

## B. Plaintiffs' operating hours preemption claim fails.

Plaintiffs alleged Mich. Admin Code R. 436.1403(1), which prohibits liquor sales between 2:00 and 7:00 a.m., preempts 8.7.3(10)(u)(5)(b), which established GAUs operating hours. (RE **29**, Page ID # 1125) They tried to expand their claim via summary judgment, arguing MCL §§ 436.2114(1), 436.2111(1) and Mich. Admin Code R. 436.1403 preempt 8.7.3(10)(u)(5)(b) and the former supervisor's belief that winery businesses needed to close by 9:30 p.m. (Brief, RE **334**, Page ID # 12031) On summary judgment, the court found 8.7.3(10)(u)(5)(b) is not preempted and never reached Plaintiffs' former-supervisor-belief theory. (Order, RE **525**, Page ID ## 21129-21133) Plaintiffs' cross-appeal noncommittally alleges "the Township's 9:30 p.m. ban" on alcohol sales conflicts with MCL § 436.2114(2) and binding precedent. (Plaintiffs Brief, page 77) Summary judgment and preemption issues are reviewed *de novo*. *State Farm Bank*, 539 F.3d at 340. *State Farm Bank, FSB v. Reardon*, 539 F.3d 336 (6th Cir. 2008)

The MLCC does not preempt local zoning operating hours for businesses that can sell alcohol. State law prohibits alcohol sales between 2:00 a.m. and 7:00 a.m. and authorizes municipalities to prohibit Sunday sales. MCL § 436.2114. Local

regulations that add to and complement state limits create no contradiction. *DeRuiter*, 949 N.W.2d at 100. State law does not address alcohol sales between 7:00 a.m. and 2:00 a.m.;[15] "there is no conflict [where an] ordinance speaks only where the statutes are silent." *Miller,* 366 Mich. at 258. *Miller* rejected an argument that a local ordinance prohibiting water skiing between 4:00 p.m. and 10:00 a.m. conflicted-with state law prohibiting water skiing "during the period 1 hour after sunset to 1 hour prior to sunrise" because it wrongly assumed the legislature "was expressing a lawful right to water ski without regulation during the other hours of the day," when no such intent was evident. *Id.* at 258-59. This logic allows Peninsula Township to further limit operating hours on establishments that sell alcohol. As established *supra,* the MLCC requires licensees to comply with local zoning. *See also Sherman Bowling Center v. Roosevelt Park,* 397 N.W. 2d 839, 842-43 (Mich. App. 1987) (municipality may regulate events and operating hours at establishments that sell alcoholic beverages but may not use liquor sales as a regulatory determinant). The MLCC does not exempt liquor licensees from zoning limits on operating hours.

Contrary to Plaintiffs' theory, by authorizing municipal bans on Sunday sales, the MLCC does not implicitly preclude zoning regulating licensees' commercial

---

[15] The MLCC does not "establish[] uniform statewide hours" by prohibiting alcohol sales during five pre-dawn hours. (Plaintiffs Brief, page 73)

54

activities – "only" is absent from MCL § 436.2114(2). Nor is MCL § 424.2114(2) rendered superfluous by zoning limits on daily operating hours – e.g., township zoning may limit evening operating hours in certain districts, and township voters may adopt a prohibition on Sunday morning beer and wine sales township-wide via MCL § 436.2111.

*Noey v. Saginaw* did not consider zoning limits on operating hours at establishments that sell alcohol. 261 N.W. 88 (Mich. 1935). *Noey* held a citywide ban on post-midnight alcohol sales was preempted by MLCC's 2:00 a.m. closing time. It concluded the state had complete authority to regulate alcohol sales, quoting MLCC Section 52 – repealing all local ordinances inconsistent or contrary to the MLCC. *Id.* at 90. Post-*Noey,* the Legislature amended the MLCC "to meet the objections raised in *Noey* [], so as to permit local authorities to control the closing time of licensed establishments." *Mutchall,* 35 N.W.2d at 248. Plaintiffs misinterpret *Mutchall* as referring to amendments to MLCC Section 19 (Sunday sales) between 1933 and 1948, arguing neither vintage authorized local control over closing times. *Noey* never addressed Section 19 or Sunday sales*;* it quoted Section 52, which was subsequently repealed:

55

Where for any violation of this act, the license to any person issued under this act or Act No. 64 of the Public Acts of 1933 has been revoked for cause, or who has been convicted of a violation of said act or acts, no license shall be thereafter issued for a period of 2 years after such revocation, to such person.

Sec. 52. (This was a repeal section.)
HISTORY: Rep. 1947, p. 169, Act 129, Eff. Oct. 11.
ACTS REPEALED: Act 338, 1917, C L 1929, 9138-9209; Act 64, 1933; Sec. 25, Act 285, 1909, C L 1929, 1140; Secs. 27-28, Act 134, 1885, C L 1929, 6853-6854; Sec. 3, Act 123, 1921, C L 1929, 547; Sec. 8, Act 263, 1917, C L 1929, 5599; Act 325, Local Acts 1901.

436.53 Saving clause.
Sec. 53. Saving clause. This act shall not impair or affect any act done, offense committed or right accruing, accrued or acquired, or penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed

(1948 Code, RE **334-23**, Page ID # 12194; 1933 Code, **334-22**)

Plaintiffs again ignore Michigan precedent, cited *supra*, recognizing local authority to regulate establishments that sell alcohol. *See also Mallach v. Mt. Morris,* 284 N.W. 600 (Mich. 1939); *Tally v. Detroit*, 220 N.W.2d 778, 781 (1974); *Stafford's Restaurant, Inc. v. Oak Park,* 341 N.W.2d 235, 238-39 (Mich. App. 1983), *leave denied,* 357 N.W.2d 658 (Mich. 1984) (collecting cases; upholding city resolution effectively banning sale of beer and wine for on-premises consumption); *Jott, Inc. v. Clinton Charter Twp*., 569 N.W.2d 841, 852-53 (Mich. App. 1997); *Maple BPA, Inc. v. Bloomfield Charter Twp.,* 838 N.W.2d 915, 920-22 (Mich. App. 2013). This Court also recognizes that state jurisdiction over liquor traffic "is not exclusive." *Felix v. Young,* 536 F.2d 1126, 1132-33 (6th Cir. 1979) (citing *Mutchall*, *supra*).

*R.S.W.W. v. Keego Harbor* was not about preemption. *R.S.W.W. v. Keego Harbor,* 397 F.3d 427 (6th Cir. 2005). That case held the plaintiff brewpub stated an unconstitutional conditions due process claim where the city allegedly refused to issue administrative permits unless the brewpub agreed to close at 11:00 p.m. Citing *Noey,* this Court concluded "there is a written regulation that both confers the benefit

56

at issue (serving alcohol until 2:00 a.m.) and prohibits city officials from rescinding the benefit." *Id.* at 435-36. *Keego Harbor* did not address *Mutchall's* recognition that the MLCC was amended post-*Noey* to allow local regulation of closing time, nor post-*Noey* caselaw recognizing broad local authority over MLCC licensees. This Court did not determine operating-hours conflict preemption between local zoning and state laws – and to the extent *Keego Harbor* is irreconcilable with Michigan law, it would be nonbinding in this cross-appeal. *See Rinard v. Luoma,* 440 F.3d 361, 363 (6th Cir. 2006).

For these reasons, if the PTZO limited winery operating hours, Plaintiffs' preemption claim would fail. Their cross-appeal challenges no specific ordinance provision, so it double-fails. Plaintiffs abandoned their pleadings, which complained only that 8.7.3(10)(u)(5)(b) conflicts with Mich. Admin. Code R. 436.1403(1). (RE **29**, Page ID # 1125) Instead, this cross-appeal appears founded on Manigold's testimony that he believed a 9:30 closing time for all winery business was "inferred" and "that's what I'm enforcing." (Plaintiffs Brief, page 73 (citing Manigold, RE **611-154**, Page ID ## 28002-28003) The court refused to address unpleaded preemption claims and disregarded Plaintiffs' unprecedented former-supervisor-belief theory.

(Order, RE **525**, Page ID # 21124) Regardless of what Manigold believed,[16] he lacked legal authority to interpret or enforce zoning – those powers are expressly delegated to the other Township designees, supporting regulatory consistency, clarity and other benefits. PTZO 4.1.2, 4.2.1, 5.7.2. Plaintiffs' closing time preemption cross-appeal is meritless.

### C. Plaintiffs introduced an operating-hours due process claim too late.

Plaintiffs assert the court erred by not awarding damages for alleged improper enforcement of an unwritten closing time. The court recognized this as an unpleaded substantive due process claim and found "it would be extremely prejudicial to Defendants" to allow Plaintiffs to pursue it. (Order, RE **623**, Page ID # 31453-31454) The court further found "conflicting testimony . . . as to whether the Wineries did or would stay open beyond 9:30." (*Id.*, 31472) The court's decision allowing trial testimony on operating hours is reviewed for abuse of discretion; its finding that operating-hours testimony was conflicting is reviewed for clear error; its conclusion that Plaintiffs sought to pursue a new claim is reviewed *de novo*; and its decision to disallow late assertion of a new claim is reviewed for abuse of discretion. *See U.S. Bank, N.A. v. Village of Lakeridge, LLC,* 583 U.S. 387, 395-99 (2018) (review of

---

[16] The record is devoid of evidence that Manigold forced any Plaintiffs to close at 9:30 p.m.; most wineries close much earlier. (Brief, RE **356**, Page ID # 12966 n.14; Brief, RE **619**, Page ID ## 31242-31246-31247, nn.147-150).

mixed question depends on its primary nature); *see Ale v. TVA*, 269 F.3d 680, 692-93 (6th Cir. 2001) (reviewing decision allowing expanded claims for abuse of discretion).

Plaintiffs try to squeeze their new operating-hours due process claim into their Complaint, but it is not there. Their sole claim related to operating hours was preemption. (RE **29**, Page ID # 1125) Their sole due process claim alleged nothing about operating hours. (*Id.* at 1121) There is no excuse for Plaintiffs' failure to plead this claim pre-trial.

Regarding due process, Plaintiffs' summary judgment motion argued only that "Guest Activity" was vague. (Brief, RE **136**, Page ID ## 4747-4750) They separately argued the Township admitted "there is no explicit closing time for wineries" but never related that argument to due process. (*Id.,* 4751-4752) They cited *Chalmers v. City of Los Angeles,* 762 F.2d 753, 759-60 (9th Cir. 1985) to support lost profits as proper Section 1983 damages but never cited *Chalmers* at 757-58 in support of an operating-hours due process argument.[17] (*Id.*, 4752)

The court originally found the Township failed to address Plaintiffs' "Township's concessions" argument and prohibited enforcing closing time

---

[17] *Chalmers* addressed conflicting ordinances, not unwritten restrictions. 762 F.2d at 757-58.

restrictions on any Plaintiff.[18] (Order, RE **162**, Page ID ## 6020-6021) On motion for reconsideration, the court maintained "the Township had conceded *this issue*"; it never "found the Township had conceded *improper enforcement*." (Order, RE **211**, Page ID # 7812; Plaintiffs Brief, page 78, emphases added) The court vacated this summary judgment ruling after PTP intervention. (Order, RE **301**, Page ID # 10697)

The court found Plaintiffs never articulated a claim that enforcing unwritten operating hours violates due process until trial. (Opinion, RE **623**, Page Id # 31453) Plaintiff introduced this operating-hours theory as both a "liberty" and "vagueness"[19] due process claim.[20] (Transcript, RE **601**, Page ID ## 23312-23318) Township counsel objected because it related to no live pleaded claim. (*Id.*) PTP joined and further objected that shoehorning operating hours into "vagueness" was particularly prejudicial because PTP was denied any opportunity to litigate due process. (*Id.,* 23317) The court overruled these objections because "the issue of closing time and guest activity has been in this case since day one." (*Id.,* 23319) Whether the court admitted the operating-hours testimony to support a pleaded claim resolved on

---

[18] Separately, 8.7.3(10)(u)(5)(b) was invalidated because it contained the "vague" term "Guest Activity." (Order, RE **162**, Page ID # 6019)

[19] Plaintiffs' counsel said, "it's not a new theory. It's void for vagueness. That is the claim, void for vagueness. It's not a new theory." (Transcript, RE **600**, Page ID # 23318)

[20] Plaintiffs now settle on a liberty interest due process claim. (Plaintiffs Brief, pages 2, 17)

summary judgment (preemption) or an unpleaded operating-hour due process claim, it abused its discretion.

Even if an operating-hours due process claim could be gleaned by squinting at Plaintiffs' Complaint (it cannot), that would be insufficient to pursue the claim at trial. Liberalized pleading rules yield to preventing unfair surprise when claims are not introduced until after summary judgment or beyond. *See Tucker v. Union of Needletrades Industries & Textiles Employees*, 407 F.3d 784, 787-89 (6th Cir. 2005); *West v. Wayne County,* 672 Fed. Appx. 535, 541 (6th Cir. 2016); *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279-80 (10th Cir. 2004). The court rightly concluded that introducing a new liability theory at trial would be extremely prejudicial to Defendants – a conclusion Plaintiffs ignore.

Manigold's ambiguous deposition aside, Plaintiffs presented no evidence the Township "enforced" an unwritten closing time. Winery owners testified they heard about a closing time rule but introduced no evidence of violation notices, citations, fines, or any coercive act. (*See* Brief, RE **619**, Page ID ## 31346-31247 nn.149-50) No winery maintained hours as late as 9:30 p.m.; most closed earlier because of reduced evening-time demand or staffing restraints. (*Id.,* 31246, nn.147-48) Plaintiffs ignore the court's well-substantiated finding that testimony was conflicting on when and why wineries closed for the evening.

For these reasons and those presented in Peninsula Township's briefing on the merits of Plaintiffs' operating-hours due process claim, the Court should reject Plaintiffs' cross-appeal.

### D. MLCC restaurant provisions do not preempt zoning.

Plaintiffs cross-appeal the court's decision declining in summary judgment to resolve Plaintiffs restaurant preemption claim because it was not properly pled. Review is *de novo. See Tucker,* 407 F.3d at 787.

Unlike their operating-hours due process claim, Plaintiffs' complaint mentioned restaurant preemption. (RE **29**, Page ID # 1126) It invoked MCL § 436.1536, quoted subsection 7(h) (winemakers "may own and operate a restaurant … as part of an on-premises tasting room …."), and alleged conflict between "the Winery Ordinances" and MLCC regarding restaurants. The court twice declined to resolve it because Plaintiffs' Complaint failed to identify any allegedly preempted PTZO provisions.[21] (Orders, RE **162**, Page ID ## 5985-5986; RE **525**, Page ID ## 21123-22224) Plaintiffs neglected to seek leave to amend their Complaint.

---

[21] Plaintiffs' vague restaurant-preemption pleading exposes their fundamental misunderstanding of zoning. No single PTZO provision prohibits restaurants in A-1 because the PTZO operates permissively: restaurants are expressly permitted in C-1 but not A-1. PTZO 6.6.2, 8.10.2(9); *Dezman v. Bloomfield Charter Twp.*, 997 N.W.2d 42 (Mich. 2023). To avoid confusion, the PTZO clarified that Farm

In stark contrast to their unpleaded operating-hours due process claim, Plaintiffs' restaurant preemption theory presents a straightforward legal question that was exhaustively briefed below.[22] (Briefs, RE **53**, **62**, **70**, **250**, **263**, **273**, **334**, **350**, **353**, **356**, **375**, **444**, **473**, **478**)  As such, there is no surprise here, and it would serve judicial economy to resolve this barely-pleaded claim. *See Bard v. Brown County,* 970 F.3d 738, 749 (6th Cir. 2020) (issue preserved where first raised in summary judgment motion hearing).

Michigan's three-tier regulatory system separates ownership and operations among alcoholic beverage suppliers (manufacturers or producers), wholesalers (distributors), and retailers (restaurants, bars, stores). MCL §§ 463.1202, 436.1603; *Granholm v. Heald,* 544 U.S. 460, 466 (2005). The Legislature enacted a limited exception for certain suppliers (small winemakers, distillers, brewers, etc.) also to operate as retailers (restaurants). MCL § 426.1536(7)(h).

---

Processing Facilities and Winery-Chateau GAUs are *not* restaurants. PTZO 6.7.2(19)(a), 8.7.3(10)(u)(2)(b).

[22] Contrary to Plaintiffs' assertion, *PTP* did not elicit Dr. Daniels' testimony about restaurants – *Plaintiffs* did. (RE **604**, Page ID ## 23948-23952) Dr. Daniels never opined that "prohibiting restaurants preserved agriculture"; his report noted that wine region municipalities commonly limit food service at wineries and opined that, in his experience, "a bar or restaurant is a commercial use and not an agricultural use because it does not produce agricultural commodities. By contrast, a tasting room is an accessory use that allows for the tasting and the sale of wine produced on the premises." (*Id.*; Report, RE **616**, Page ID ## 30808-30809, 30822-30823)

The MLCC regulates alcohol trafficking, not food service, which it leaves to state and local departments authorized by the Food Law. *See* MCL § 436.1111(5) (restaurant means "food service establishment" by reference to Food Law). The Food Law defines "food service establishment" broadly to include places where "food or drink is prepared," and defines "food" broadly to include drinks. MCL § 289.1107(t),(m). The MLCC does not require or permit licensees to own or operate restaurants, it tolerates them – winemakers "may" own and operate a restaurant in their tasting room. But the MLCC does require licensees to comply with local zoning – that's printed right on their license:

(RE **356-1**, Page ID ## 12987)

64

Peninsula Township prohibits neither food service nor restaurants – both are expressly allowed by the PTZO. Restaurants are authorized in C-1, and all A-1 winery land uses authorized food service in tasting rooms. PTZO 6.6.2, 8.10.2(9), 6.7.2(19)(a), 6.7.2(19)(b)(iv), 8.7.3(10)(d)(2), 8.7.3(12)(h). It is undisputed that each winery provides food and drink in their tasting room. Even if the MLCC *required* "restaurants" – i.e., licensed "food service establishments" as defined by the MLCC and Food Law – in tasting rooms (it does not), Peninsula Township allows all the MLCC requires, and each winery provides it. There is no conflict.

*DeRuiter* does not help Plaintiffs because the MLCC does not "authorize[] and regulate[]" restaurants or food service – it permits and regulates liquor trafficking. 949 N.W.2d at 98. Plaintiffs' restaurant preemption claim involves an activity (food service) that the MLCC accepts without authorizing, permitting, or regulating – both the statute and ordinance can stand. *See National Amusement,* 259 N.W. at 343. Conflict might arise if the MLCC required tasting rooms to provide free crackers for patrons and zoning forbade food in tasting rooms.

The underlying issue here is that Plaintiffs want to operate restaurants in A-1, which the PTZO does not authorize. The distinction between authorizing A-1 wineries to offer food service in tasting rooms but not restaurants is one of scale and intensity – an issue reserved to local zoning. *See Schwartz v. Flint,* 395 N.W.2d 678, 685 (Mich. 1986) ("Zoning, by its nature, is most uniquely suited to the exercise of

the police power because of the value judgments that must be made regarding aesthetics, economics, transportation, health, safety, and a community's aspirations and values in general."). This distinction has no bearing on MLCC preemption. The MLCC does not care if a small winemaker operates a farm-to-table restaurant, a full-scale restaurant, a fine restaurant, or no restaurant – it simply allows winemakers to operate licensed food establishments in tasting rooms. The MLCC does not preempt zoning that limits "restaurants" to C-1 while allowing food service in A-1 tasting rooms.

### E. Private commercial events are not protected commercial speech.

Plaintiffs' fourth cross-appeal argument is that "Winery events" should be treated as "commercial speech" protected by the First Amendment because they allow wineries to market their wine. The court twice rejected their theory in summary judgment on the basis the relevant conduct "contains insufficient elements of speech, if any."[23] (Orders, RE **162**, Page ID # 6004-6005; RE **559**, Page ID ## 21903-21906) When Plaintiffs attempted to solicit evidence related to their events-are-commercial-speech theory at trial, the court sustained Defendants' objection. (Transcript, RE **600**, Page ID ## 23090-23103; Objection, RE **586**) While Plaintiffs

---

[23] Plaintiffs labeled private commercial events – now coined "product demonstrations" – as "agritourism" and "experiential advertising" in summary judgment; their arguments are identical. (Briefs, RE **469**, Page ID ## 16952-16955; RE **501**, Page ID ## 19454-19459)

specify no standard, review of this legal question is *de novo*. *Burzynski v. Cohen*, 264 F.3d 611, 616 (6th Cir. 2001).

Five problems sink Plaintiffs' cross-appeal. *First*, the PTZO does not limit or regulate Plaintiffs' proposal of their desired commercial transactions (wine sales). Plaintiffs may engage with anyone they want about their wine and wineries all day every day. They may advertise wine for sale anywhere and demonstrate the finer points of their wine however they want. They may invite people or groups to buy wine in person or virtually or through clubs and may draw them with free tasting room entertainment. What they cannot do is rent out their facilities to private groups (except under the former GAU provisions). It is non-credible that Plaintiffs want to host weddings and other commercial events to propose more wine sales; they want to host private events to generate additional revenues via substantial facilities fees, as evidenced by their damages calculations and pricing information distributed to inquiring brides. (*See* MSJ Exhibit, RE **517-59**, Page ID ## 20443-20452 (Mari 2020 Peak Season Event Pricing ranged from $500/hour to $5,000 for a 4-hour Tasting Room rental; wedding ceremonies cost $800-$1,900, wine excluded)

*Second*, while Plaintiffs challenge 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d), which confirmed that weddings, receptions, and other social events for hire are *not* authorized as part of Farm Processing Facilities and Winery-Chateau GAUs, those never caused Plaintiffs' plight. Commercial events are and have always been

unauthorized land uses in A-1. *See Independence Township v. Skibowski*, 355 N.W. 2d 903, 906 (1984) (permissive zoning implies exclusion of non-listed uses). Invalidating 6.7.2(19)(a) and 8.7.3(10)(u)(2)(d) would not help Plaintiffs without amending zoning to allow private events for hire in A-1. That such events may be permissible accessory uses elsewhere does not mean Peninsula Township authorized them in A-1 – it hasn't (why would Plaintiffs file this case if it had?). While Plaintiffs flirt with yet another preemption theory – that state policy promoting agritourism usurps local zoning – neither the Michigan Generally Accepted Agricultural and Management Practices (GAAMPs) nor a former state official's opinion nor a press release about "Michigan Agritourism Month" means that "Michigan law allows these uses." (Plaintiffs Brief, pages 82-84)

*Third,* renting winery facilities for weddings and events is commerce, not speech. Even if these private events might also include "product demonstrations," Peninsula Township's limitation targets facility use rather than any message. By limiting rentals – not expression – the PTZO is a straightforward and valid regulation of business conduct. *See Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 695-97 (6th Cir. 2014); *McLemore v. Gumucio,* 149 F.4th 859, 866 (6th Cir. 2025) (license requirement to prevent unlicensed auctioneers from transacting with the public did not implicate speech). Any impact on speech is slight and incidental. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). By Plaintiffs' logic, because marketing

68

could occur any time a person steps in the door, zoning limits on facility rentals that might bring more visitors must restrict speech. This logic threatens any business regulation with triggering strict scrutiny – restricting hours prevents wineries from demonstrating products to night-owl patrons; capacity limits reduce the number of patrons available to hear the pitch. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."); *Lichtenstein v. Hargett,* 83 F.4th 575, 583-88 (6th Cir. 2023).

*Fourth,* Plaintiffs' theory is unprecedented. *Bolger v. Youngs Drug Products Corp.* considered whether to classify undisputable "speech" (mailings) as "fully protected" or lesser "commercial speech." *Bolger v. Youngs Drug Products Corp* , 463 U.S. 60, 65-66 (1983). *See also Jordan v. Jewel Food Stores, Inc.,* 743 F.3d 509, 513-14 (7th Cir. 2014) (whether obvious speech – print advertisement – was commercial or noncommercial). The presence of *Bolger* factors cannot transform non-speech into commercial speech. *Board of Trustees of State University of New York v. Fox*[24] considered finer points of *Central Hudson* as applied to a university resolution that prevented students from hosting Tupperware demonstrations in their

---

[24] Plaintiffs cite *American Future Systems, Inc., v. State University of New York College,* 565 F. Supp. 754 (N.D. NY 1983) as if it were a different case rather than the district court decision in the *Fox* controversy.

dorms – the resolution targeted speech 492 U.S. 469 (1989). The PTZO does not target "product demonstrations," only facility rentals. A bridal party may visit Bonobo for "product demonstrations" – private group tastings are unlimited; the bride may not rent Bonobo's facilities for her wedding reception. *Alive Church of the Nazarene, Inc. v. Prince William County* involved no speech – commercial or otherwise 59 F. 4th 92 (4th Cir. 2023). It considered the lawfulness of a zoning ordinance that treated churches differently than wineries and breweries in the agricultural district. *Id.* at 103-104. The court found the distinction reasonable because winery events had a nexus to agriculture while church gatherings did not. That Prince William County's zoning was reasonable does not indicate Peninsula Township's is unconstitutional.

*Fifth*, it would compound error to summarily extend the *Central Hudson* analysis to facility rentals for private events, then to affirm the court's $49 million damages award on this alternative theory. If Plaintiffs had demonstrated zoning limitations on private commercial events impaired speech, then Defendants would have demonstrated such limitations directly advance and proportionately fit the Township's substantial zoning interests. The damages award stemming from Plaintiffs' due process claim is deeply flawed and should be reversed, not extended under Plaintiffs' radical cross-appeal commercial speech theory.

70

## IV.   CONCLUSION

PTP respectfully requests this Court vacate the district court's rulings identified in PTP's Brief, deny Plaintiffs' cross-appeals, and enter judgment accordingly.

Respectfully submitted,

Date: May 18, 2026          By: _____

Tracy Jane Andrews (P67467)
Law Office of Tracy Jane Andrews, PLLC
Co-Counsel for Appellant
420 East Front Street
Traverse City, MI 49686
(231) 714-9402
tja@tjandrews.com


Date: May 18, 2026          By: _____

Holly L. Hillyer (P85318)
TROPOSPHERE LEGAL, PLC
Co-Counsel for Appellant
420 East Front Street
Traverse City, MI 49686
(231) 709-4709
holly@tropospherelegal.com

## <u>CERTIFICATE OF WORD COUNT PURSUANT TO FRAP 32(g)</u>

The undersigned certifies that the Intervenor-Appellant's Third Brief complies with the Court's order. The Intervenor-Appellant's Third Brief consists of 12,885 words and was created using Times New Roman, 14 pt font and Microsoft Word 365.

Date: May 18, 2026          By: _____

Tracy Jane Andrews (P67467)
Law Office of Tracy Jane Andrews, PLLC
Co-Counsel for Appellant
420 East Front Street
Traverse City, MI 49686
(231) 714-9402
tja@tjandrews.com

## <u>CERTIFICATE OF SERVICE</u>

I, Tracy Jane Andrews, hereby certify that on the 18th of May 2026, I

electronically filed the foregoing documents with the CM/ECF system which will

send a notification of such to all parties of record.

Date: May 18, 2026        By: _____

Tracy Jane Andrews (P67467)
Law Office of Tracy Jane Andrews, PLLC
Co-Counsel for Appellant
420 East Front Street
Traverse City, MI 49686
(231) 714-9402
tja@tjandrews.com